23845

Freda UPCHURCH, Jimmy Upchurch, Kevin Upchurch, Chase Upchurch, Dee Dee Upchurch Allen, and Michelle Upchurch Wood, Appellants v. The NEW YORK TIMES COMPANY, d/b/a Spartanburg Herald, and Ralph Grier, Respondents.

(431 S.E. (2d) 558)

Supreme Court

*Wade S. Weatherford, III,* of Gaffney, and *J. Bruce Foster,* Spartanburg, *for appellants.*

*Carl F. Muller* and *Wallace K. Lightsey,* both of *Wyche, Burgess, Freeman & Parham,* Greenville, and *Deborah R. Linfield,* of *The New York Times Co.,* New York, *for respondents.*

Heard March 9, 1993.

Decided May 3, 1993.

HARWELL, Chief Justice:

This is an action for intentional infliction of emotional distress. Appellants Freda Upchurch, Jimmy Upchurch, Kevin Upchurch, Chase Upchurch, Dee Dee Upchurch Allen, and Michelle Upchurch Woods appeal a directed verdict in favor of respondents The New York Times Company, d/b/a *Spartanburg Herald,* and Ralph Grier, a reporter for the *Spartanburg Herald.* We affirm.

## I. FACTS[1]

On August 18, 1986, Bodie Upchurch, the son and brother of appellants, was lifting weights of the Gaffney YMCA. He began feeling unwell and decided to discontinue his workout. A short while later, while Bodie was driving home, he collapsed and died. He was twenty-three-years old and in apparent good health.

The next morning, an autopsy to determine the cause of death commenced in the presence of two law enforcement officers from the Gaffney Police Department. A white, powdery substance was detected in Bodie's nostrils during the initial examination of his body. A swab of the substance was forwarded to State Law Enforcement Division (SLED) for analysis to determine whether the substance was cocaine. The law enforcement officers reported the discovery of the white,

---

[1]We recite the facts in the light most favorable to appellants as the non-moving party in this appeal from the granting of a directed verdict. *Sub Station II of Tennessee v. Oliver,* 307 S.C. 166, 414 S.E. (2d) 141 (1992).

powdery substance to their chief of police, who cautioned them to divulge nothing about the discovery to anyone until the results of the SLED analysis revealed the identity of the substance.

Despite official secrecy regarding the discovery of the white, powdery substance, rumors quickly began circulating in the community that cocaine was implicated in Bodie's death. Soon respondents were seeking official confirmation that law enforcement suspected the white, powdery substance to be cocaine. Law enforcement refused to comment regarding the cause of Bodie's death. The request for a drug screen prepared by the coroner and forwarded to SLED was not in the possession of respondents, and there is no evidence that respondents were aware of the existence of the request. An alternative explanation was inferable that the white, powdery substance in Bodie's nostrils was chalk or talc used by Bodie when he was lifting weights. Nevertheless, respondents published a front page article and Bodie's picture under a banner headline exclaiming "Cocaine Suspected In Death." The same day the article was published, SLED toxicology reports came back negative as to the presence of cocaine. In fact, Bodie died of an obstruction of blood to his heart resulting from previously undiagnosed coronary atherosclerosis.

Appellants brought this action for intentional infliction of emotional distress, alleging that the newspaper article contained false information that law enforcement suspected cocaine was involved in Bodie's death, that respondents knew or should have known that the statements contained in the article were false, and that their publishing the article constituted outrageous conduct entitling appellants to recover for the emotional harm they had suffered as a result of reading the article. At the conclusion of a jury trial, the trial judge directed a verdict in favor of respondents on the grounds that the statements contained in the article were substantially true at the time of publication. According to the trial judge, an article which truthfully reports a matter of public concern is protected under the free press guarantees of the First Amendment, and, as a result, cannot be considered to be such extreme and outrageous conduct so as to constitute intentional infliction of emotional distress.

## II. DISCUSSION

Appellants contend that the trial judge erred in directing a verdict for respondents. We disagree.

As an initial matter, we find respondents' reliance on substantial truth as a defense to the tort of intentional infliction of emotional distress to be misplaced. This defense is applicable in defamation actions. *See, e.g., Capps v. Watts*, 271 S.C. 276, 246 S.E. (2d) 606 (1978); *see also Holtzscheiter v. Thomson Newspapers, Inc.*, 306 S.C. 297, 411 S.E. (2d) 664, 671 (1991) (Toal, J., dissenting) (in an invasion of privacy claim, whether a news statement was "substantially true" is of no consequence). Moreover, we disagree with the trial judge that respondents' allegedly tortious acts are shielded simply by virtue of the protections guaranteed the press by the First Amendment. The publisher of a newspaper has no special immunity from the application of general laws, and he has no special privilege to invade the rights and liberties of others. *Nicholson v. McClatchy Newspapers*, 177 Cal. App. (3d) 509, 223 Cal. Rptr. 58 (1986) (quoting *The Associated Press v. Nat. Labor Rel. Bd.*, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953 (1937)). Thus, the fact that respondents' speech may be constitutionally privileged does not automatically protect them from private action. *See The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed. (2d) 443 (1989) (action for invasion of privacy). However, when a newspaper (1) lawfully obtains (2) truthful information about (3) a matter of public significance, liability may be imposed only if it serves a need to further a state interest of the highest order. *Id.* at 536-37, 109 S.Ct. at 2610-11, 105 L.Ed. (2d) at 457. If the test articulated in *Florida Star* is not met, torts committed by the press are actionable more readily, particularly when a private party is involved. *See, e.g., Miller v. National Broadcasting Co.*, 187 Cal. App. (3d) 1463, 232 Cal. Rptr. 668 (1986) (television crew's alarming absence of sensitivity and civility in filming and broadcasting last moments of dying man's life without regard to the decedent's wife's subsequent protestations presented a question for the jury as to the wife's cause of action for intentional infliction of emotional distress); *Dietemann v. Time, Inc.*, 449 F. (2d) 245 (9th Cir. 1971) (First Amendment does not give publication license to intrude into a home simply

because the person subjected to intrusion reasonably is suspected of committing a crime).

Accordingly, a correct analysis of respondents' liability to appellants would have addressed the threshold inquiry under *Florida Star*. We perceive that we need not review the facts under *Florida Star* in order to determine whether to uphold the directed verdict, however. We find that we must affirm the trial judge because appellants possess no basis upon which to assert a cause of action for intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress arises when one by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. *Ford v. Hutson*, 276 S.C. 157, 162, 276 S.E. (2d) 776, 778 (1981) (quoting Restatement (Second) of Torts § 46 (1965)). In order to recover for the intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Id.*

The law limits claims of intentional infliction of emotional distress to egregious conduct toward a plaintiff proximately caused by a defendant. *Christensen v. Superior Court*, 54 Cal. (3d) 868, 820 P. (2d) 181, 2 Cal. Rptr. (2d) 79 (1991). It is not enough that the conduct is intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware. *Id.* at 903, 820 P. (2d) at 202, 2 Cal. Rptr. at 100; *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 12 (1984 & Supp. 1988) (hereinafter *Prosser & Keeton*). There is no evidence that respondents targeted appellants to be harmed by their allegedly tortious acts.

The harm suffered by appellants arose only indirectly from respondents' publishing allegedly false information about Bodie. There are situations when plaintiffs may recover for in-

tentional infliction of emotional distress for harm they suffer as the result of acts which have injured another. The Restatement (Second) of Torts § 46(2) (1965) provides:

> § 46. Outrageous Conduct Causing Severe Emotional Distress
>
> . . . . . .
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
>
> (b) to any other person who is present at the time, if such distress results in bodily harm.

As a matter of policy, courts have limited such recovery "to the most extreme cases of violent attack, where there is some especial likelihood of fright or shock." *Prosser & Keeton* § 8. *See, e.g., Courtney v. Courtney,* 186 W. Va. 597, 413 S.E. (2d) 418 (1991) (assault on mother in son's presence stated cause of action for intentional infliction of emotional distress by son).

There being no evidence that respondents physically attacked Bodie in the presence of appellants, we must hold that appellants do not possess a cause of action for intentional infliction of emotional distress arising under section 46(2). We agree with out sister state's disposition of a claim for intentional infliction of emotional distress which originated under strikingly similar facts. In *Briggs v. Rosenthal,* 73 N.C. App. 672, 327 S.E. (2d) 308, *cert. denied,* 314 N.C. 114, 332 S.E. (2d) 479 (1985), the plaintiffs brought an action for intentional infliction of emotional distress against an author and publisher as the result of a magazine article describing their son who had died in an automobile accident. The court noted that the magazine article had been published in a periodical intended for the public. The parents were not the subject of the article, but, like appellants herein, brought their action as third-party family members distressed because they felt that their son had been disparaged in the magazine article. The *Briggs* court affirmed the trial court's dismissal of the parents' complaint because, among other reasons, the author and publisher of the

magazine, like respondents herein, had not specifically directed their conduct toward the plaintiffs, and had not committed a violent act upon the son in the presence of the plaintiffs. *Accord Miller,* 187 Cal. App. (3d) at 489, 232 Cal. Rptr. at 682 (claims by daughter for intentional infliction of emotional distress excluded because thrust of her claims arose out of her relationship to her parents, the victims of the tortfeasor).

In sum, we hold that appellants possess no viable cause of action for intentional infliction of emotional distress against respondents because there is no evidence respondents directed their allegedly tortious conduct at appellants, and because we discern no facts that would warrant recovery by appellants under section 46(2). We also find appellants' remaining allegation to be without merit.

We may affirm the trial judge for any reason appearing in the record. Rule 220(c), SCACR; *Hossenlopp v. Cannon,* 285 S.C. 367, 329 S.E. (2d) 438 (1985). We conclude that the trial judge did not err in directing a verdict in favor of respondents.[2] Accordingly, the order of the trial judge is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.

---

[2]Had Bodie survived to bring this action against respondents for publishing an unsubstantiated article indicating cocaine had been suspected in his collapse, for example, a directed verdict in favor of respondents might not be appropriate. As discussed above, a newspaper generally is shielded from liability when it prints truthful information of public significance which it has lawfully obtained. The facts are hotly disputed as to whether respondents made a deliberate decision to print mere rumors and suspicions. As stated earlier, and had this case been in the proper posture, respondents may have had to overcome a challenge that they did not meet the three-part test enunciated in *Florida Star* before they could have invoked the protections recognized by the United States Supreme Court in that case. *But see Hustler Magazine v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed. (2d) 41 (1988) (to recover for intentional infliction of emotional distress, public figures and public officials must show publication contains a false statement of fact which was made with actual malice).