2413

Anne T. HAINER, Respondent v. AMERICAN MEDICAL INTERNA-
TIONAL, INC.; East Cooper Community Hospital, Inc.; Cindy Woltman;
Patricia Condon; and Katherine Sellers, Appellants.

(465 S.E. (2d) 112)

Court of Appeals

*E. Douglas Pratt-Thomas, Allison M. Carter,* and *D. Kay Tenneyson,* all of *Wise & Cole,* Charleston, *for appellants.*

*Fleet Freeman,* of *Freeman & Freeman,* and *Justin O'Toole Lucey,* of *Justin O'Toole Lucey, P.A.,* Mount Pleasant, *for respondent.*

Heard Sept. 12, 1995.

Filed Nov. 6, 1995; Reh. Den. Dec. 20, 1995.

*Per Curiam:*

Respondent, Anne T. Hainer, sued appellants, American Medical International, Inc. (AMI), East Cooper Community Hospital, Inc. (Hospital), Cindy Woltman, Patricia Condon, and Katherine Sellers, for abuse of process, intentional infliction of emotional distress, civil conspiracy, and defamation.[1] The jury awarded Hainer compensatory damages of $75,000 against all appellants, and punitive damages of $225,000 against the corporate appellants. We reverse.

This action arose after Hainer, a registered nurse, was reported to the State Board of Nursing for South Carolina (the Board) by her supervisor, Katherine Sellers, for misconduct committed by Hainer on July 16, 1989. After the report,

---

[1] The court granted summary judgment to appellants on the civil conspiracy cause of action and Hainer voluntarily withdrew the cause of action for defamation. Therefore, the only issues before the jury were abuse of process and intentional infliction of emotional distress.

the Board began an investigation into Hainer's conduct which culminated in a complaint being filed by the Board against her alleging she was guilty of "patient abandonment" as defined in 26 S.C. Code Ann. Regs. 91-19.c(3)(p) (Supp. 1994) and S.C. Code Ann. § 40-33-935(e)(1986). A disciplinary hearing panel appointed by the Board concluded Hainer "committed misconduct in violation of R 91-19.c(3)(p) . . . in that [she] left her assigned patients requiring nursing care without properly notifying appropriate personnel." In reaching that conclusion, the panel specifically found on July 16, 1989, Hainer clocked in for her assigned shift, accepted responsibility for patients, and took a patient assignment. However, after she became angry at the charge nurse, she left the hospital without notifying the charge nurse or administrative supervisor. In its order, the Board adopted the panel's report and recommendation[2] in its entirety, and the circuit court affirmed. Hainer did not appeal the order of the circuit court, and, as such, the findings of the Board became final. Therefore, the court in this action ruled that under the doctrine of collateral estoppel, Hainer was estopped from raising or relitigating the issue of whether or not she was, in fact, guilty of misconduct.[3] Thus, the finding that Hainer was guilty of patient abandonment is the law of this case. *Bennett v. S.C. Dept. of Corrections*, 305 S.C. 310, 408 S.E. (2d) 230 (1991) (under the doctrine of collateral estoppel, the decision of an administrative tribunal precludes the relitigation of the issues addressed by that tribunal in a collateral action).

Hainer's claims in this action are based on allegations that appellants delayed reporting her to the Board intentionally and maliciously for the purpose of preventing her from testifying as a witness against appellants in the lawsuit of a coworker, Sandra Enright. Enright sued the hospital for negligence, outrage, breach of fiduciary duty and civil conspiracy arising out of the Hospital's alleged threat to have her nursing license revoked for patient abandonment if she failed to report for work during Hurricane Hugo, even though she was not

---

[2] The panel recommended that Hainer's license be placed on probation for 6 months and that she pay a $500 civil penalty.

[3] Although the facts surrounding the events of July 16, 1989 were hotly contested and remained a source of dispute during the trial, this court will not consider those disputed facts as Hainer is collaterally estopped from relitigating the "fact" that she was guilty of patient abandonment.

scheduled to work. The Enright suit alleged impropriety on the part of the Hospital by using threats of licensure loss against its personnel in order to control them. In this suit, Hainer maintained the reason for the delay in reporting her to the Board was to chill her testimony in the Enright suit.[4]

### I. Abuse of Process

Appellants argue they were entitled to a directed verdict on Hainer's abuse of process claim because they were statutorily required to report Hainer's misconduct. Because the communication to the Board was subject to a qualified privilege, they contend that they cannot be held liable for their action in reporting her. We agree and, thus, reverse the jury verdict.

In ruling on the denial of motions for directed verdict, j.n.o.v. and a new trial, the evidence and all reasonable inferences from the evidence must be considered on a light most favorable to the nonmoving party. *Rush v. Blanchard*, 310 S.C. 375, 426 S.E. (2d) 802 (1993); *Brown v. Orndorff*, 309 S.C. 320, 422 S.E. (2d) 151 (Ct. App. 1992). We are not at liberty to pass upon the veracity of the witnesses and determine the case according to our view of the weight of the evidence. *Id.* 422 S.E. (2d) at 154. If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and the motions for directed verdict and j.n.o.v. are properly denied. *Horry County v. Laychur*, — S.C. —, 434 S.E. (2d) 259 (1993). However, if only one reasonable inference can be drawn from the evidence, the motion must be granted. *Id.*

---

[4] Hainer testified at trial she was not aware Enright had filed a lawsuit or that she could be a witness in that case until March of 1990, after she had already been contacted by the Board investigator concerning the complaint filed against her for patient abandonment. She argued, however, the Hospital acquired knowledge of the Enright suit and the fact that she could be a potential witness in that case somewhere between October and December of 1989. She further maintained the Hospital initiated the patient abandonment complaint against her some 7 months after the July 16th incident not to comply with a statutory duty to report misconduct, but, instead, for the improper purpose of gaining a collateral advantage in the Enright suit. Specifically, Hainer contends the objective or ulterior motive of the Hospital in filing the complaint against her was to damage her credibility so that if she did testify in the Enright suit, her testimony would be discredited, and more importantly, to have a chilling effect on any other potential witnesses employed by the hospital.

In order to insure that licensed nurses comply with the standards of their profession, the State of South Carolina has mandated that "all employers of Nurses *shall* report any incidence of the misconduct or the incapacities described in § 40-33-935 to the State Board of Nursing." S.C. Code Ann. § 40-33-970 (1986). Pursuant to 26 S.C. Code Ann. Regs. 91-19-.c.(3)(p) and S.C. Code Ann., § 40-33-935(e), patient abandonment is defined and designated as an act of misconduct, the violation of which would mandate the reporting of the offense to the Board. Section 40-33-936 (1986) further provides that communications to the the Board shall be privileged except when made with malice:

> Every communication, whether oral or written, made by or on behalf of any person, firm or corporation to the board or any person designated by it to investigate or otherwise hear matters relating to the revocation, suspension, or other restriction on a license or the limitation on or other discipline of a licensee, whether by way of complaint or testimony, shall be privileged; and no action or proceeding, civil or criminal, shall lie against any such person, firm or corporation by or on whose behalf such communication shall have been made by reason thereof, except upon proof that such communication was made with malice.

The obvious legislative intent behind this statutory scheme is to insure that nurses meet minimum requirements for safe practice and that those falling below minimum competency be prohibited from practicing. *See* S.C. Code Ann. § 40-33-220 (Supp. 1994).

Hainer, in fact, concedes that appellants had a duty to report her to the Board. She alleges, however, that the appellants filed the disciplinary complaint not to comply with that statutory duty; rather, they filed the complaint to the Board for the ulterior purpose of chilling her testimony in the Enright suit. Hainer maintains the Enright lawsuit provided appellants with collateral reasons to attack and discredit her since that suit involved the alleged improper use of threats against Enright's nursing license for patient abandonment in order to obtain her compliance, and Hainer could have been a critical witness for Enright. Thus, the use of the process for

this ulterior and wrongful purpose is what created liability for abuse of process.

In support of her contention, Hainer relies on *Huggins v. Winn Dixie Greenville, Inc.*, 249 S.C. 206, 153 S.E. (2d) 693 (1967), *Aff'd* 252 S.C. 353, 166 S.E. (2d) 297 (1969) where our Supreme Court outlined the essential elements of the tort of abuse of process: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.[5] In *Huggins* the court further held:

> Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; *and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.* The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. *There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.* (Emphasis added.)

*Id.* 153 S.E.(2d) at 694.

The dispositive issue on appeal is whether the report of Hainer's misconduct was made with the requisite malice. There are no South Carolina cases which interpret the meaning of malice as used in § 40-33-936. The appellants point out that our interpretation of this Section not only affects the nursing profession but will likewise affect many professionals since the language in this Section is virtually identical to immunity provisions granted to persons reporting or testifying before boards regulating chiropractors, physical therapists, physicians, and social workers. Therefore, as a matter of public policy, the appellants urge that our holding avoid any possi-

---

[5] Hainer argues in her brief, she did not have to show both an ulterior purpose *and* a wilful act to prove abuse of process. However, South Carolina courts have clearly required both elements to be proven in order to recover for the tort. *Huggins*, 249 S.C. 206, 153 S.E. (2d) 693; *Sierra v. Skelton*, 307 S.C. 217, 414 S.E. (2d) 169 (Ct. App. 1992).

ble construction of the statutory scheme which would diminish or have a chilling effect on the legal responsibility and requirement of licensees to report possible violations of 26 S.C. Code Ann. § 91-19 and S.C. Code Ann. § 40-33-935 to appropriate authorities.

Therefore, keeping in mind the described statutory scheme which obligates licensees to communicate knowledge of a violation, public policy considerations, and the procedure for implementing the legislative purpose and intent underlying the regulation of nurses, we hold the evidence was legally insufficient to prove the essential element of malice. In her brief, Hainer notes that the trial judge "defined the different forms of malice [for the jury], and then *charged* the appellants' requested charge that 'malice is the deliberate, intentional doing of a wrongful act without just cause or excuse.'"[6] This charge was not objected to by Hainer and is thus the law of the case. After a thorough review of the record, we find no evidence of malice which fits this definition. *See* F. P. Hubbard & R. L. Felix, *The South Carolina Law of Torts* (1990). As a matter of law, there was just cause to report Hainer to the Board for misconduct. This is evidenced by the Board's finding that Hainer committed misconduct, which is also the law of this case. As such, there was sufficient evidence to establish misconduct, and no malice to overcome the privilege against liability created by § 40-33-936. Consequently, we reverse the trial judge's denial of appellants' motion for a directed verdict on the abuse of process cause of action.

---

[6] In charging the jury, the trial judge stated:

If you find that the [appellants] communicated to the South Carolina State Nursing Board regarding Ann Hainer and that such communication was done with malice, then the [appellants] are not protected by this provision of the law and the communication is not privileged. Malice can take several forms. Express malice is malice with defendant's deliberate intention to injure or to act with wrongful motive against the plaintiff. Express malice is evidenced by external circumstances.

Constructive malice is malice implied from the defendant's conduct or act and is proven by inferring that the defendant's conduct would necessarily injure plaintiff rather than direct proof of defendant's intention to injure the plaintiff.

Implied malice is malice confirmed by legal reasoning and necessary deduction from the defendant's conduct, or malice inferred from any deliberate cruel act by the defendant against the plaintiff.

I charge you that malice is the deliberate, intentional doing of a wrongful act without just cause or excuse.

II. Intentional Infliction of Emotional Distress

Appellants contend the trial judge erred when he failed to grant them a directed verdict on Hainer's claim of intentional infliction of emotional distress because there was no evidence to support such a finding. We agree.

To establish the tort of intentional infliction of emotional distress or outrage, the plaintiff must establish the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or knew that distress would probably result from his conduct; (2) the Defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Initially, the trial court determines whether the defendant's conduct was extreme and outrageous enough to permit recovery. The judge should submit the issue to the jury only where reasonable persons might differ on this issue. *Shupe v. Settle,* 315 S.C. 510, 445 S.E. (2d) 651 (Ct. App. 1994) (citing *Holtzscheiter v. Thomson Newspapers, Inc.,* 306 S.C. 297, 411 S.E. (2d) 664 (1991)); *Ford v. Hutson,* 276 S.C. 157, 276 S.E. (2d) 776 (1981).

S.C. Code Ann. § 40-33-970 (1986) requires all employers of nurses to report any instances of misconduct as described in § 40-33-935 to the State Board of Nursing. Misconduct includes "patient abandonment." 26 S.C. Code Ann. Regs. 91-19.c.(3)(p) (Supp. 1994). Hainer was found guilty of patient abandonment, and she has not appealed this decision. Clearly, the mere reporting of an individual to a licensing board, as mandated by the State, is not conduct so extreme and outrageous that "no reasonable person could be expected to endure it." *Shupe,* 445 S.E. (2d) at 655.

Even if we had found appellants liable to Hainer for abuse of process, their actions do not rise to the level of outrage. In *Corder v. Champion Road Mach. Int'l. Corp.,* 283 S.C. 520, 324 S.E. (2d) 79 (Ct. App. 1984), we held that mere retaliatory discharge for filing a workers' compensation claim, absent claims of verbal assaults or hostile, abusive encounters, did

not rise to the level required for the tort of outrage. Similarly, in *Todd v. S.C. Farm Bur. Mut. Ins. Co.*, 283 S.C. 155, 171, 321 S.E. (2d) 602, 611 (Ct. App. 1984), *rev'd. on other grounds*, 287 S.C. 190, 336 S.E. (2d) 472 (1985) we held the tort of intentional infliction of emotional distress is not a "panacea for wounded feelings rather than reprehensible conduct." This court has also noted that "not all conduct involving personal interaction and causing emotional distress in a business setting may serve as a basis for an action alleging outrage." *Folkens v. Hunt*, 290 S.C. 194, 203, 348 S.E. (2d) 839, 845 (Ct. App. 1986). After reviewing the record in a light most favorable to Hainer, we hold there was no competent evidence presented that appellants' actions against her were so outrageous as to constitute intentional infliction of emotional distress.

Due to our reversal of the trial judge's denial of directed verdicts on the only two issues submitted to the jury, we need not address appellants' remaining arguments.

Reversed.

CURETON, GOOLSBY and HEARN, JJ., concur.