2501

John DOE, Appellant v. BERKELEY PUBLISHERS, d/b/a
The Berkeley Independent, Respondent.

(471 S.E. (2d) 731)

Court of Appeals

*Thomas R. Goldstein,* of *Belk, Cobb, Infinger & Goldstein,* Charleston, *for appellant.*

*Jay Bender* and *Charles E. Baker,* both of *Baker, Barwick, Ravenel & Bender,* Columbia, *for respondent.*

Heard Jan. 11, 1996.

Decided Apr. 22, 1996; Reh. Den. June 20, 1996.

*Per Curiam:*

John Doe appeals the trial judge's order granting a directed verdict to Berkeley Publishers, d/b/a *The Berkeley Independent* ("Berkeley") on Doe's claim of invasion of privacy and intentional infliction of emotional distress. We affirm the grant of a directed verdict on intentional infliction of emotional distress; we reverse the grant of a directed verdict on invasion of privacy, and remand for further proceedings consistent with this opinion.

## I. FACTS

On July 15, 1992, John Doe was arrested for allegedly dousing a St. Stephens woman with gasoline and setting fire to her mobile home. He was charged with assault and battery with intent to kill, kidnapping, first-degree burglary, and first-degree arson. On January 15, 1993, the Berkeley County Grand Jury returned each indictment with a designation of "NO BILL."

While Doe was being held at the Berkeley County jail on these charges, a woman, who identified herself as the sister of Doe's alleged victim, called Allen Morris, the editor and publisher of *The Berkeley Independent,* and told him Doe had been "beaten up" in jail. Morris then contacted the Berkeley County Sheriff's Department to confirm the information. He

talked to Colonel Meade, who informed him the department had an incident report reflecting Doe had been sexually assaulted while incarcerated.

Morris told one of his reporters. Subsequently, *The Berkeley Independent* published a story about Doe's arrest, as well as an article disclosing Doe's identity as the victim of a rape by a fellow inmate while being held at the jail.

## II. PROCEDURE

Doe sued Berkeley for invasion of privacy and intentional infliction of emotional distress. He filed the summons and complaint as John Doe. The trial judge ordered him to proceed using his real name. Berkeley answered, alleging because the publication was truthful, lawfully obtained, and concerned a matter of public interest, it was privileged under the First and Fourteenth Amendments to the United States Constitution.

The trial judge bifurcated the issues of liability and damages. At the close of the liability portion of the case, he orally directed a verdict for the newspaper on both causes of action. He signed a form order and requested that Berkeley's lawyer prepare a formal order. Doe appealed the directed verdict prior to the filing of the formal order. After the formal order was filed, Doe filed a motion for reconsideration, which was denied. Doe then appealed that order. He moved to use the fictitious name "John Doe" for his appeal. The Supreme Court granted his motion.

## III. ANALYSIS OF
## SUBSTANTIVE ISSUES ON APPEAL

### A. *Invasion of Privacy*

Doe asserts the trial judge erred in directing a verdict on invasion of privacy. He argues his identity was either (1) unlawfully obtained or (2) whether it was unlawfully obtained was a question of fact for the jury.

When considering a motion for a directed verdict, the trial judge must view the evidence and all its inferences in the light most favorable to the nonmoving party. If the evidence is susceptible of more than one reasonable inference, the case must be submitted to the jury. *Horry County v. Laychur*, 315 S.C. 364, 434 S.E. (2d) 259 (1993).

In directing a verdict for Berkeley on the cause of action for invasion of privacy, the trial judge relied on the United States Supreme Court decision in *The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed. (2d) 443 (1989). In *Florida Star*, the Court adopted the following test, first enunciated in *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103, 99 S.Ct. 2667, 2671, 61 L.Ed. (2d) 399 (1979):

> [I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.

### 1. Lawfully Obtained

Doe argues that because South Carolina's rape shield statute makes it unlawful to disclose a rape victim's name, the Sheriff's Department unlawfully disclosed the information and, correspondingly, Berkeley unlawfully received the information. *See* S.C. Code Ann. § 16-3-730 (1985).[1] However, the rape shield statute is a criminal statute and does not govern whether the information was lawfully obtained. *Dorman v. Aiken Communications, Inc.*, 303 S.C. 63, 398 S.E. (2d) 687 (1990) (construing § 16-3-730 as a criminal statute created primarily for the protection of the public, and holding it does not create a private right of action). Rather, the South Carolina Freedom of Information Act governs this issue. S.C. Code Ann. §§ 30-4-10 through -110 (1991 & Supp. 1995). S.C. Code Ann. § 30-4-50 declares certain matters "public information." Subsection (A)(8) includes "incident reports which disclose the nature, substance, and location of any crime or alleged crime reported as having been committed." Subsection (A)(8) also notes "[w]here an incident report contains information exempt as otherwise provided by law, the

---

[1] S.C. Code Ann. § 16-3-730 states in full:

Whoever publishes or causes to be published the name of any person upon whom the crime of criminal sexual conduct has been committed or alleged to have been committed in this State in any newspaper, magazine or other publication shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than one thousand dollars or imprisonment of not more than three years. The provisions of this section shall not apply to publications made by order of court.

law enforcement agency *may* delete that information from the incident report." S.C. Code Ann. § 30-4-50(A)(8) (Supp. 1995) (emphasis added). Accordingly, the Sheriff's Department had discretion whether or not to delete John Doe's name for the incident report. Section 30-4-50(A)(8) (Supp. 1995) (emphasis added). Accordingly, the Sheriff's Department had discretion whether or not to delete John Doe's name from the incident report. Section 30-4-40 exempts certain matters from public disclosure, including "[i]nformation of personal nature where public disclosure thereof would constitute unreasonable invasion of personal privacy." S.C. Code Ann. § 30-4-40(a)(2) (Supp. 1995). Because the plain language of § 30-4-50 contemplates the release of exempt information, the two code sections are not inconsistent and the Sheriff's Department retained its discretion. *See Florida Star,* 491 U.S. at 536, 109 S.Ct. at 2610-11 ("the fact that state officials are not required to disclose such reports does not make it unlawful for a newspaper to receive them when furnished by the government"); *accord, South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.,* — S.C. —, 447 S.E. (2d) 843 (1994) (exemptions from FOIA impose no duty not to disclose but simply allow the public agency discretion to withhold exempted material from disclosure); *see also Mims v. Alston,* 312 S.C. 311, 440 S.E. (2d) 357 (1994) (specific statute controls over more general statute).

Doe also argues there is an inference the information was unlawfully obtained because the newspaper reporter picked up the incident report more than six months after the article was published. Information capable of being lawfully obtained does not become transformed with the passage of time into something unlawfully obtained. Accordingly, we find as a matter of law that Berkeley lawfully obtained the information.

### 2. Truthfulness

It is undisputed Doe was sexually assaulted while incarcerated in the Berkeley County jail. Therefore truthfulness is not an issue.

### 3. Public Significance

Doe argues the trial judge erred in granting a directed verdict because a question of fact exists whether the news article published in *The Berkeley Independent*

concerned a matter of public significance. In *Florida Star*, the Supreme Court held a news article revealing the name of a victim of sexual assault contained a matter of public significance because "the article generally, as opposed to the specific identity contained within it, involved a matter of paramount public import: the commission, and investigation, of a violent crime which had been reported to authorities." *Florida Star*, 491 U.S. at 536-37, 109 S.Ct. at 2611.

The Supreme Court noted in *Florida Star* it had resolved each case involving the tension between the First Amendment and personal privacy "in a discrete factual context." 491 U.S. at 530, 109 S.Ct. at 2607. The factual dissimilarities between this case and *Florida Star* lead to the conclusion the jury should decide whether the article at issue here contained a matter of public significance.

To begin with, the plaintiff in *Florida Star* sued the newspaper for invasion of privacy based on the negligent violation of a statute which made it unlawful for any person to print, publish, or broadcast the name of a victim of a sexual offense in any instrument of mass communication. 491 U.S. at 528, 109 S.Ct. 2606. The Court held imposing damages in those circumstances violated the First Amendment. The Court noted, in contrast to common law claims of invasion of privacy, the statutory scheme it was scrutinizing did not require case-by-case findings, nor did it require scienter of any kind. 491 U.S. at 539, 109 S.Ct. at 2612. Here Doe sued for invasion of privacy based on common law, which does not require case-by-case findings.

Moreover, in *Florida Star* the article was one of 54 "police blotter" stories the newspaper ran that day. 491 U.S. at 527, 109 S.Ct. 16 2605-06. Here, the article was a sidebar to a larger article that appeared on the front page. *The Florida Star* alleged inclusion of the victim's name was inadvertent. *Id.* at 528, 109 S.Ct. at 2606. Under the facts presented here, it appears *The Berkeley Independent* did not inadvertently publish Doe's name. The editor for *The Berkeley Independent* testified the paper published the story to show "the irony that a person charged with a series of violent crimes had himself been the alleged victim of a violent crime." He furthermore stated deleting Doe's name from the article could have changed the story because "[Doe's] name was printed as an

aspect, a valuable aspect, among many aspects of the story." However he acknowledged the entire story could have been run simply deleting Doe's name. In fact, a report of the trial of a serial rapist, in which the rape victim's name was not disclosed, ran in the same issue of the newspaper as the Doe article. Furthermore, the editor admitted *The Berkeley Independent* had never before published a rape victim's name. The editor characterized the two stories about Doe as "a matter of public interest and concern," because the newspaper reports crimes so people in the community can know what crimes have been committed. The editor distinguished printing Doe's name from not printing other rape victims' names because Doe was incarcerated and the other victims were not. In contrast, the reporter who wrote the article testified even though it was the paper's policy to delete the names of rape victims, this article presented a "special circumstance" in that "[t]here was a crime committee and [Doe's name] was already listed in the story."

Issues of fact concerning Berkeley's purpose in including Doe's name bear on public significance because not every purpose will rise to the level of public significance. *See Hawkins v. Multimedia Inc.*, 288 S.C. 569, 344 S.E. (2d) 145 (whether a fact is a matter of public interest is a question of fact to be decided by the jury), *cert. denied*, 479 U.S. 1012, 107 S.Ct. 658, 93 L.Ed. (2d) 712 (1986);[2] *cf. Meetze v. Associated Press*, 230 S.C. 330, 95 S.E. (2d) 606 (1956) (one limitation on the right of privacy is that it does not prohibit the publication of matter which is of legitimate public or general interest; public interest is more than mere curiosity). Accordingly, we remand the issue of whether publishing Doe's name as a victim of sexual assault was a matter of public significance for a jury to determine.

### B. *Intentional Infliction of Emotional Distress*

The trial judge directed a verdict in favor of Berkeley on Doe's intentional infliction of emotional distress cause of action, relying on *Upchurch v. New York Times Co.*, 314 S.C. 531, 431 S.E. (2d) 558 (1993). In *Upchurch*, plaintiffs sued for intentional infliction of emotional distress

---

[2] Although this case predated *Florida Star*, "legitimate public or general interest" may be analogized to "a matter of public significance."

based on an article that appeared in *The Spartanburg Herald* implicating cocaine use in the death of their family member, Bodie Upchurch. An autopsy showed Upchurch died of an undiagnosed heart condition. The white, powdery substance found in Upchurch's nostrils was not cocaine and could have been chalk or talc used by Upchurch while weightlifting. In upholding the trial judge's grant of a directed verdict, the supreme court indicated that it was not necessary to address the threshold inquiry under *Florida Star* where there was no basis upon which to assert a cause of action for intentional infliction of emotional distress. *Id.* Doe did not appeal the trial judge's grant of a directed verdict based on *Upchurch* and thus, it became the law of the case. *Resolution Trust Corp. v. Eagle Lake & Golf Condominiums*, 310 S.C. 473, 427 S.E. (2d) 646 (1993) (an unchallenged ruling by the trial court is the law of the case). Accordingly, we affirm the trial judge on this issue.

## IV. ANALYSIS OF PROCEDURAL ISSUES ON APPEAL

Doe next asserts the trial judge erred in signing a written order confirming his oral order granting Berkeley a directed verdict because the trial judge lost jurisdiction once Doe filed a notice of appeal.

After orally directing a verdict for Berkeley, the trial judge asked counsel for Berkeley to prepare a formal order. The form order entering judgment in the case dated October 26, 1994, stated "[counsel for Berkeley] to prepare formal order." On November 4, 1994, John Doe's Notice of Intent to Appeal was filed. On November 7, 1994, the trial judge signed the formal order which was filed with the Clerk of Court's office on January 17, 1995. Although Rule 204, SCACR, provides that "[u]pon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal," Rule 203(b)(1), SCACR, governs the time for service of a notice of appeal from the Court of Common Pleas:

When a form or other short order or judgment indicates that a more full and complete order or judgment is to follow, *a party need not appeal until receipt of written notice of entry of the more complete order or judgment.*

(Emphasis added.) Accordingly, the trial judge did not lose jurisdiction of the case.

Doe further alleges the written order contained matters not in the record as well as inferences that should have been drawn in favor of Doe as the nonmoving party. Doe fails to pride argument or supporting authority for this error. Thus, we assume he abandoned this issue. *First Savings Bank v. McLean*, 314 S.C. 361, 444 S.E. (2d) 513 (1994) (appellant was deemed to have abandoned issue when he failed to provide any argument or supporting authority).

Doe also argues the trial judge erred in denying his right to proceed under a fictitious name as a victim of a rape. However, the Supreme Court granted his motion to proceed under a fictitious name. Therefore, he may proceed under this name on remand.

Accordingly, the order of the trial judge is

Affirmed in part, reversed in part and remanded.

HOWELL, C.J., and CURETON and CONNOR, JJ., concur.