**Andrea CRAIG and Barry Craig, Plaintiffs,**

v.

**ANDREW AARON & ASSOCIATES, INC. d/b/a A. Aaron & Associates, Inc., Crane Plastics and Sam Myers, Defendants.**

Civil Action No. 3:95–3602–17.

United States District Court, D. South Carolina, Columbia Division.

Nov. 13, 1996.

Eric S. Bland, Steven Kapustin, Connell & Bland, Columbia, SC, for plaintiffs.

S. Nelson Weston, Jr., Richardson, Plowden, Grier & Howser, Columbia, SC, Benjamin D. McCoy, Howser, Newman & Besley, LLC, Columbia, SC, Frank S. Potts, Lide, Montgomery, Potts & Medlock P.C., Columbia, SC, for defendants.

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter came before the court for hearing on October 15, 1996, on defendants' motions for summary judgment and on plaintiffs' motion to terminate the deposition of plaintiff Barry Craig ("Mr. Craig"). For the reasons set forth below, the court grants defendant Crane Plastics' motion for summary judgement in full, grants defendant Andrew Aaron & Associates, Inc's motion for summary judgment in part, and finds plaintiffs' motion to terminate Barry Craig's deposition to be moot.[1]

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interroga-tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiffs, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### FACTS

Taken in the light most favorable to plaintiffs, the facts are as set forth below. The present dispute arises from actions taken by defendant Sam Myers, an employee of Aaron & Associates, Inc. ("Aaron"), in his attempts to collect a commercial debt. The debt was owed to defendant Crane Plastics ("Crane") by plaintiff Andrea Craig's ("Mrs. Craig's") employer. Mrs. Craig was the general manager and purchasing agent for her employer, a corporation. Mrs. Craig and her husband claim damages resulting from Myers' collection efforts.

Mrs. Craig was not personally liable on the debt at issue but signed the underlying purchase order. Despite continuing efforts on Crane's part over an extended period of time,

---

1. Defendant Myers has never been served with the pleadings in this action. The Clerk of Court is, therefore, directed to dismiss him from this action without prejudice.

the debt remained unpaid. Eventually, Crane entered an agreement with a third party collection agency, Aaron, for Aaron to attempt to collect the debt. Aaron, in turn, assigned its employee Myers to handle the collection.

Throughout the period at issue, Mrs. Craig was the primary point of contact for Crane and Aaron. Mrs. Craig has no complaints about Crane's own collection efforts. After the debt was turned over to Aaron for collection, however, Myers made a number of calls to plaintiffs' home in an attempt to collect the corporation's debt. These calls continued even after both Mr. and Mrs. Craig told Myers not to call the home.

In their depositions, the Craigs revealed the particular content of two calls. The first was the only call received by Mr. Craig. In this early August 1995 call, Myers made a statement to the effect that Mrs. Craig had "drug her a* * off spending my d* * * money on vacation." Deposition of Barry Craig at 12. Mr. Craig was previously unaware of any problems with Myers or the debt at issue and reacted with significant anger: "I said who are you and where are you at, because it ticked me off and if he had been in Columbia, I would have physically hurt the fellow and I still will if I ever meet him." Barry Craig deposition at 12. However, Mr. Craig let the matter drop at that point and did not deal with it further after advising his wife of the call. At this point, Mr. Craig believed his wife would take care of the problem at work. Mr. Craig apparently thought very little more about the call until his wife received a call from Myers threatening to take personal action against the Craigs on the debt.

According to Mrs. Craig, she received this "threatening" call on August 25, 1995. Myers called her a number of times at her home on that date. Mrs. Craig refused to speak with Myers each time, apparently hanging up on him. Myers called back a fourth time and left a message on the answering machine which contained the following language:

> Now you owe sixteen hundred dollars. You signed for it, you owe it. I don't care what's wrong with the business. You better find the money and take care of it. Now if you don't, you know what's going to happen. We're going to come after you personally, your house, your husband.

Mrs. Craig was very upset by the message left on the answering machine because, at that point in time, she feared she could be held personally liable. She immediately contacted her employer's attorney and learned that she could not be held personally liable.

Mrs. Craig testified to various emotional injuries, none requiring any medical intervention or counseling, and none causing any loss of income or other similarly measurable loss beyond, perhaps, loss of two to three days at work.[2] Indeed, certain of the claimed "injuries" are more in the nature of appropriate reactions to lessons learned in the conduct of business.[3] Further, a number of the damage items Mrs. Craig claimed in her deposition are inconveniences of the litigation process rather than damages flowing directly from Myers' actions.

Even though Myers' taped message was available to him, Mr. Craig never listened to it. He has never learned of its precise content, only that it was perceived by his wife as "threatening" in some manner. He never believed that he or his wife could be held personally liable on the debt. In his deposition, Mr. Craig at first indicated that he was not personally injured in any way by the calls, but then indicated a degree of anger and frustration over the "process." It was clear from his testimony, however, that his

---

**2.** Mrs. Craig is a salaried employee and testified that she took two to three days off from work the week following the August 25, 1995 call because she was upset. She further testified, however, that any resulting loss was a loss for the company, not for herself. Andrea Craig deposition at 157.

**3.** For instance, Mrs. Craig testified that as a result of the call from Myers, she decided to involve legal counsel in the termination of three employees (all three relatives of the owner and one with 25 years of experience). She also testified that she is careful now not to make purchases that the company cannot afford and that she now checks with the owner to determine how to allocate payments between the company's suppliers because she cannot pay all of the company's bills in full.

primary frustration was over the litigation process, not the call itself.

## DISCUSSION

There appears to be no dispute that Mrs. Craig was not personally liable on the debt. The present moving parties (Crane and Aaron) also concede that Myers' calls to the Craigs' home and the content of the last message, or use of profanity as alleged by Mr. Craig, were unprofessional and inappropriate. In short, the question is not whether Myers acted properly and professionally, but whether his actions satisfy the elements of the three tort claims alleged. As to Crane, there is the additional question whether it can be held liable for the actions of Aaron's employee, Myers.

### 1. Crane's liability for the actions of Aaron's employee, Myers.

■ After unsuccessfully attempting to collect the debt itself, Crane hired an independent company, Aaron, to act as collection agent. Plaintiffs have offered no evidence that Crane retained any right to control the actions of Aaron or its employees and Crane has presented evidence to the contrary. It is undisputed that Crane was unaware of Myers' actions and that Crane terminated the services of Aaron as soon as it learned of Myers' unprofessional behavior. Therefore, for the reasons argued by defendant Crane, this court finds that Crane cannot be held liable for the actions of Myers under these circumstances. *See, e.g., Hoover v. Wise,* 91 U.S. 308, 23 L.Ed. 392 (1875) (applying New York law to find attorney hired by the collection agency was not an agent of the creditor); 15A Am.Jur.2d *Collection and Credit Agencies* § 2 (creditor is not generally responsible for torts of an independent collection agency or its employees).

### 2. Intentional infliction of emotional distress.

■ To establish the tort of intentional infliction of emotional distress, or outrage, plaintiffs must establish four elements: (1)

that the defendant recklessly or intentionally inflicted severe emotional distress or knew that distress would probably result from the conduct; (2) that the conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious, and utterly intolerable in a civilized community; (3) that the actions caused emotional distress; and (4) that the distress suffered was so severe that no reasonable person could be expected to endure it. *Hainer v. American Medical Int'l, Inc.,* 465 S.E.2d 112, 117 (S.C.Ct.App.1995), *cert. granted,* Aug. 8, 1996. It is the duty of the court to make the initial determination whether the conduct was sufficiently extreme and outrageous that the issue should be submitted to the jury. *Id.*

■ The facts alleged by plaintiffs support the conclusion that Myers acted inappropriately. Myers' comments in his conversation with Mr. Craig were vulgar and clearly upset Mr. Craig for at least a short period of time. Myers' later threats to pursue the debt personally against the Craigs were unfounded and caused at least some temporary distress for Mrs. Craig. Myers' insistence on calling the home when asked not to do so was also inappropriate and a cause of distress for both Mr. and Mrs. Craig. It is not enough, however, that Myers' actions were rude, vulgar or inappropriate; they must reach a level of conduct so extreme and outrageous that it exceeds all possible bounds of decency and must be atrocious and utterly intolerable in a civilized community. A reasonable jury could not conclude that these actions rose to that level of conduct.

Similarly, the outrage claim must fail because the distress caused was not sufficiently severe to satisfy the fourth element of this cause of action. While both plaintiffs suffered some distress, their own testimony demonstrates that this distress was not sufficiently severe to support this claim.

Mr. Craig, for instance, was party to only one contact with Myers. Mr. Craig reacted strongly to this contact but only for a relatively short period of time.[4] Mr. Craig can-

---

4. Mr. Craig's reaction seems better characterized as "anger" than distress. For purposes of this motion, however, the court has presumed without deciding that anger can satisfy the distress

not base a claim on Myers' other calls or the message left on the tape because Mr. Craig did not receive those calls. Indeed, he never even heard the tape of the message. *See Upchurch v. New York Times Co.*, 314 S.C. 531, 431 S.E.2d 558, 561 (1993) (to support an action for outrage, conduct must be directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware). Even if Myers could base a claim on these other calls, his resulting anger would not be sufficient distress to support an outrage claim. It is also significant that Mr. Craig testified primarily to distress associated with the legal process. Whatever distress may have resulted from the filing of the action, however, cannot legally be considered as "distress" caused by Myers.[5] *See Rimer v. State Farm Mut. Auto. Ins. Co.*, 248 S.C. 18, 148 S.E.2d 742, 746 (1966) (time spent in effort to protect one's rights not generally an element of damages).

Mrs. Craig had significantly more contact with Myers. She received a number of calls at her home and was the intended and actual recipient of the taped message. The latter caused Mrs. Craig the most distress because she actually believed for a short period of time that she might be held personally liable. As noted, however, this belief was short-lived as Mrs. Craig consulted an attorney shortly thereafter. Mrs. Craig's own testimony as to the manifestations of her emotional distress injuries are simply inadequate to support an outrage claim.

For the reasons stated above, this court finds that all defendants are entitled to judg- ment as a matter of law on the claims for intentional infliction of emotional distress.

### 3. Invasion of Privacy.

■ Under South Carolina law, the tort of invasion of privacy falls into several cate- gories. *See generally, Snakenberg v. Hart- ford Casualty Ins. Co., Inc.*, 299 S.C. 164, 383 S.E.2d 2, 5–6 (1989); *Meetze v. Associated Press*, 230 S.C. 330, 95 S.E.2d 606 (1956). The relevant category in the present case would be the wrongful intrusion into private affairs. To establish this claim, plaintiffs must show (1) an intrusion, which may con- sist of prying, besetting or other similar con- duct; (2) into that which is private (that is, those aspects of plaintiffs' self, home, family which one normally expects to be free from exposure to the others); (3) that the intru- sion was substantial and unreasonable; and (4) that the defendants' conduct was inten- tional. *Snakenberg*, 383 S.E.2d at 6. When there has been no public disclosure of infor- mation, "it is incumbent upon [plaintiffs] to show a blatant and shocking disregard of [their] rights, and serious mental or physical injury or humiliation ... therefrom." *Rob- erts v. Dunbar Funeral Home*, 288 S.C. 48, 339 S.E.2d 517, 520 (1986).

■ For purposes of this cause of action, the wrongful act was Myers' insistence on calling plaintiffs' home after being asked not to do so.[6] As noted above, the calling of the home itself caused some distress. However, it is clear from plaintiffs' own testimony, as discussed above regarding the tort of out-

---

requirement. The court has also disregarded, for purposes of this motion, the possibility that the degree of anger with which Craig reacted might well be considered a reaction which Myers would not have anticipated. *See generally Satter- field v. Lockheed Missiles & Space Co., Inc.*, 617 F.Supp. 1359, 1365 (D.S.C.1985) (conduct may be adjudged outrageous because a defendant acts with knowledge that a plaintiff is peculiarly sus- ceptible to emotional distress). Likewise, the court has disregarded Mr. Craig's own penchant for the vernacular in deciding that Myers' use of the terms "a* *" or "d* * *" in his call to Mr. Craig did not meet the threshold for outrageous behavior.

5. For instance, Mr. Craig indicated he was upset by the time wasted attending the deposition and the manner and subject matter of defense coun-

sel's questions. Not only are these complained- of inconveniences the natural result of the civil action, rather than the alleged tort, but as a party, Mr. Craig should reasonably have expect- ed them. Apparently he was not apprised of the normal procedures as he did not meet his own counsel until minutes before the deposition, months after suit was filed on behalf of both him and his wife. This is not, in any case, the fault of any of the defendants.

6. In their memorandum in opposition to Aaron's motion, plaintiffs state that there were "23 min- utes of calls to Plaintiff's [sic] home, 11½ minutes of calls to [the] office." The court presumes the specific times must have come from a phone record or bill, although no supporting document is cited or provided.

rage, that the distress does not rise to the level of "serious mental or physical injury or humiliation" necessary to support this claim.

In their brief in response to the summary judgment motions, plaintiffs argue that their damages stem from "the unwanted exposure resulting from the intrusion." Plaintiffs, however, have suggested no evidence of publication of the information by defendants or other "unwanted exposure." This reliance is, therefore, misplaced. *See generally Satterfield v. Lockheed Missiles & Space Co., Inc.,* 617 F.Supp. 1359, 1370 (D.S.C.1985) (action for invasion of privacy was unsupported because the only evidence of publication was of publication by plaintiff).

Similarly, although plaintiff argues that humiliation alone is enough, the only suggested evidence of "humiliation" is Mrs. Craig's testimony that she is embarrassed now because she has had to contact legal counsel to assist her in performing her job. Her later specification of the instances of consulting legal counsel, however, included only situations when consulting counsel was clearly advisable from a business standpoint. The same is true as to Mrs. Craig's claims of inability to make business decisions on her own, as the specified decisions related to the allocation of inadequate funds between competing creditors.

### 4. Nominal Damages.

■ At the hearing on this matter, plaintiffs' counsel argued that if the conduct was invasive of privacy or outrageous, otherwise satisfying the elements of the tort of outrage or invasion of privacy, then nominal and punitive damages could be awarded. This is clearly not the law as to these two causes of action. Certainly, there are many torts in which plaintiffs need only show some damages, including nominal damages, to carry their burden of proof. Unlike those claims, however, both the tort of invasion of privacy

when there is no public disclosure and the tort of outrage require a significant degree of injury as an element of the cause of action. As has been stated as to the outrage claim, this action is not "a panacea for wounded feelings." *Hainer,* 465 S.E.2d at 117. This limitation should be equally true as to the privacy claim.

### 5. South Carolina Unfair Trade Practices Act.

■ To prove their claim for violation of the South Carolina Unfair Trade Practices Act, S.C.Code Ann. § 39–5–20 (1976) (SCUTPA), plaintiffs must demonstrate not only that Myers actions were an unfair or deceptive act or practice, but that they have an impact on the public interest. *E.g., Daisy Outdoor Advertising Co., Inc. v. Abbott,* 473 S.E.2d 47, 49 (S.C.1996). The latter can be shown by demonstrating a potential for repetition which, in turn, can be demonstrated in a variety of ways including but not limited to: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence ..., or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts...." *Id.* at 51.

Defendant Crane argues that no showing of repetition or potential for repetition has been made as to it because it terminated Aaron when it learned of Myers' alleged actions. Plaintiffs have offered nothing to counter this position.[7] As discovery is closed in this case, Crane is entitled to summary judgment on this additional ground as to this claim.

■ Defendant Aaron's sole argument as to the unfair trade practices claim is that plaintiff has failed to show adequate damages. Unlike the causes of action for outrage and invasion of privacy discussed above, the SCUTPA claim has no special damages

---

7. Indeed, the court notes that in response to Crane's memorandum which raised numerous grounds for dismissal, plaintiffs only presented arguments in opposition to the independent contractor defense and the arguments relating to the invasion of privacy claim. In opposition to Aaron's motion which argued that plaintiffs had failed to demonstrate adequate damages under any of their causes of action, plaintiffs only argued the issue of proof of damages with reference to the privacy claim. At no point in either brief did plaintiffs address the Unfair Trade Practices claim or the outrage claim. Nonetheless, the court has presumed that plaintiffs do not concede these claims.

threshold which must be met. It is adequate if plaintiff has some damages. This court, therefore, finds that the unfair trade practices claim should not be dismissed as to defendant Aaron.

### 6. Plaintiffs' motion for a protective order.

Plaintiffs have moved for a protective order regarding the early termination of the deposition of Mr. Craig. It appears to the court that the questioning by Aaron's attorney was complete at the time that the deposition was terminated and that questioning was being pursued only by counsel for Crane. As this court has granted Crane's motion for summary judgment, Crane should have no further need for the deposition. Further, Aaron would not appear to be prejudiced by the termination after its counsel had concluded his questioning. The court, therefore, finds that the motion for a protective order is moot. This ruling is, however, without prejudice to defendant Aaron's right to move to compel promptly after receipt of this order if Aaron can demonstrate a significant need to reconvene the deposition to clarify statements made for the first time during the examination by Crane's counsel.

### CONCLUSION

For the reasons stated above, defendant Crane Plastics' motion for summary judgment is granted, Defendant Aaron Andrews and Associates Inc.'s motion for summary judgment is granted as to the claims for intentional infliction of emotional distress and invasion of privacy, and plaintiffs' motion to terminate the deposition of Barry Craig is rendered moot by the dismissal of Crane. The case shall proceed to trial on the South Carolina Unfair Trade Practices claim against defendant Aaron during this court's January term.

IT IS SO ORDERED.