Frank ROZHON, Plaintiff-Appellant,

v.

TRIANGLE PUBLICATIONS, Inc., Defendant-Appellee.

No. 11541.

United States Court of Appeals Seventh Circuit.

Feb. 8, 1956.

Bernard M. Mamet, Chicago, Ill., Bernard Kleiman, Chicago, Ill., of counsel, for appellant.

Aaron M. Fine, Philadelphia, Pa., Sidney S. Gorham, Jr., Miller, Gorham, Wescott & Adams, Chicago, Ill., Harold E. Kohn, Dilworth, Paxson, Kalish & Green, Philadelphia, Pa., of counsel, for appellee.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Edwin Rozhon, plaintiff's son, died March 22, 1953 from narcotic poisoning, and an article entitled "The Fight Against Teen-Age Dope Addiction" appeared in the August, 1953 issue of defendant's magazine, Official Detective Combined With Actual Detective Stories.

One of several illustrations accompanying that article is a photograph of young Edwin. This picture, with an indistinguishable background, shows the young man standing near a portion of a fireplace decorated with Christmas cards; a partial pattern of a drapery is also discernible. Above this picture is this caption: "Eddie Rohzon, only eighteen: He died because, in the beginning, he wouldn't let friends call him a sissy." The article complained of is a double page spread and, in addition to Edwin's picture, there are other photographs, among which is a separate photograph running across both left and right hand pages at the top of this story. This particular photograph is side-captioned: "Pictured here is the deadly paraphernalia of dope—no longer unfamiliar to many teen-agers of the nation." None of the illustrations, including the one of paraphernalia, make any express mention of the plaintiff's living quarters; indeed, according to plaintiff, it is not a photograph of his home.

That picture of Edwin, published by defendant, was plaintiff's "own personal picture," made in his home. Edwin's father testified that he "did not" give defendant "the right to publish" his son's snap-shot.

Plaintiff attempts to spell out a cause of action by this allegation in his complaint:

"Such photograph of narcotics and paraphernalia of narcotics in connection with the photograph and story of the home of the Plaintiffs to be published as aforementioned, so that persons seeing the said photographs and/or reading the story might reasonably believe such narcotics and paraphernalia were found in the home of the Plaintiffs, when in fact they were not."

Frank Rozhon, father of Edwin, mentioned in defendant's printed account, had testified at the coroner's inquest in Cook County, Illinois. Newspapers in Chicago reported the inquest and published a picture of Edwin. Certain of these newspaper clippings and defendant's magazines are a part of the record before us. Sometime in June, 1953, one Pecatagi pleaded guilty to an indictment, which, in substance, charged him with making unlawful sales of narcotic drugs to minors; this prosecution also received publicity in Chicago newspapers.

Alleging invasion of his privacy, "feelings and sensibilities," plaintiff sought compensatory, punitive, and exemplary damages from this defendant publisher. Defendant's motion for summary judgment, supported by affidavits, was denied without prejudice to its rights in asserting the same grounds as support for a

motion for a directed verdict at the close of plaintiff's case. When defendant subsequently and accordingly moved, at that later stage, its motion was sustained and this appeal followed.

■■ Reviewing the propriety of a directed verdict at the close of a plaintiff's case, as here, it is necessary for us to examine the nature and quantum of the evidence offered and received below. For the right to a trial by jury is not a blanket guarantee that upon this plaintiff producing any potpourri of evidentiary fragments laced, with hints, he is automatically entitled to have his case sent to the triers of fact. See generally: 9 Wigmore, Evidence, § 2494 (3d ed.1940). "When the evidence upon any issue", wrote Mr. Justice Butler in the majority opinion reported as Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720, "is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury." Far from weighing the evidence here we are reporting the futility of our search. Nothing found during our canvass of this record ties the photograph of narcotics, already described, with plaintiff's home, save the page layout and juxtaposition of illustrations. Indicative of plaintiff's own awareness of the newsworthy status unfortunately thrust upon him, by his son's untimely death, is the following portion of his testimony elicited under cross-examination:

"Q. Is your home pictured? A. My picture of my home is right on that picture right there.

"Q. Is that your son's picture? A. That is my son's picture. It is the picture of my living room right there.

"Q. Your son's picture was in any of these newspapers? A. The top part of him.

"Q. Your own picture was in the newspaper? A. The top part of them, not the whole picture of my living room.

"Q. Your own picture was in it? A. That is right. I gave Buddie McHugh permission to use it. I gave him permission to use this picture only with the top part of it.

"Q. You gave permission? A. Yes, Buddie McHugh asked me if he could use it. He would only print the top part of my boy's body. I said, 'All right, return it,' which he said he would and he did. How they got that picture, I don't know.

"Q. You gave that picture out? A. To Buddie McHugh, yes, not to the magazine.

"Q. Other newspapers? A. For news, so that they would know what things are going on and not three months later and revive things to people. Their story is in there that happened practically seven or eight months ago."

■ In our opinion Frank Rozhon had been catapulted into an area of legitimate public news interest. Warren and Brandeis, The Right To Privacy, 4 Harv.L. Rev. 193, 214–215 (1890); Prosser, Handbook of the Law of Torts, § 97, pp. 642–643 (1941) citing and discussing the Restatement, Torts, § 867, comment c. Illinois, where this plaintiff lived, and the death occurred, has no specific legislation concerning the right of privacy. Apparently Eick v. Perk Dog Food Co., 1952, 347 Ill.App. 293, 106 N.E.2d 742, cited to us by both parties, is the sole decision reported by any Illinois state court on the reviewing level. But even if we accord some weight to that Illinois Appellate Court case it would not bridge the hiatus in plaintiff's burden of proof. We approve the trial judge's ruling underlying the judgment appealed.

Among various other points raised here by plaintiff is his contention that the jury should have been permitted to pass on the question whether defendant's publication " * * * was a news disseminating agency or a scandalous sheet designed for commercial exploitation." Leverton v. Curtis Publishing Co., 3 Cir., 1951, 192 F.2d 974 is one of several cases re-

lied upon by the plaintiff when urging that latter proposition. We now mention it for two reasons: (i) it contains a good selection of general legal materials on the law of privacy and, (ii) it is inapposite because the plaintiff in that case was herself the subject of the photographs she complained of.

 Against the factual background, shown by the record before us, we hold that the timeliness[1] of defendant's revival of the story did not present an issue which had to be submitted to the jury.

The judgment appealed is affirmed.

Affirmed.

---

1. See e. g. Estill v. Hearst Publishing Co., 7 Cir., 1951, 186 F.2d 1017; Bernstein v. National Broadcasting Co., D.C.D.C. 1955, 129 F.Supp. 817; Sidis v. F-R Pub. Corp., 2 Cir., 1940, 113 F.2d 806, 138 A.L.R. 15.