LAURA GREEN, Plaintiff-Appellant, v. CHICAGO TRIBUNE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—94—3130

Opinion filed December 30, 1996.

CAHILL, J., dissenting.

Lawrence W. Leck & Associates, of Chicago, for appellant.

Sonnenschein, Nath & Rosenthal (James A. Klenk and Gregory R. Naron, of counsel), and Chicago Tribune Company (Dale M. Cohen and Paulette Dodson, of counsel), all of Chicago, for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Laura Green, filed an amended complaint against defendant, the Chicago Tribune Company (hereinafter Tribune), alleging invasion of privacy, intentional infliction of emotional distress, and battery. The trial court dismissed plaintiff's amended complaint against the Tribune pursuant to section 2—615 of the Code of Civil Procedure. 735 ILCS 5/2—615 (West 1992). Plaintiff appeals.

First, we address whether the trial court properly granted the Tribune's section 2—615 motion to dismiss plaintiff's claim for invasion of privacy. In the invasion of privacy count, plaintiff pleaded the following allegations, which must be assumed true for purposes of the motion: Tribune staffers photographed her son, Calvin Green, on December 30, 1992, while he was undergoing emergency treatment at Cook County Hospital for a bullet wound. The Tribune never asked plaintiff's permission to photograph Calvin. After attempts to resuscitate Calvin failed, medical personnel moved him to a private hospital room to await the coroner. The coroner pronounced Calvin dead at 12:10 a.m. on December 31, 1992. Around that time, a reporter for the Tribune asked plaintiff for a statement regarding her son's death. She refused to make a statement. Meanwhile, Tribune staffers entered the private hospital room and took further unau-

thorized photographs of Calvin. While photographing Calvin, they prevented plaintiff from entering the room. When plaintiff did enter the room, the Tribune staffers listened to her statements to Calvin.

On January 1, 1993, the Tribune published a front-page article, about Chicago's record homicide rate. The article included the following quotes from plaintiff's statements to Calvin on December 31: "I love you, Calvin. I have been telling you for the longest time about this street thing." "I love you, sweetheart. That is my baby. The Lord has taken him, and I don't have to worry about him anymore. I accept it." "They took him out of this troubled world. The boy has been troubled for a long time. Let the Lord have him." The Tribune also published one of the unauthorized photographs taken of Calvin after he died. In a January 3, 1993, article,[1] the Tribune published one of the unauthorized photographs taken of Calvin while undergoing medical treatment.

Plaintiff's complaint alleges the Tribune publicly disclosed private facts and thus invaded her privacy when it (a) "trespassed" into Calvin's room; (b) photographed Calvin without plaintiff's consent; (c) prevented plaintiff from entering Calvin's room while the Tribune took photographs of him; (d) "eavesdropped" on plaintiff's statements to Calvin; (e) published on January 1 the front-page article containing quotes from plaintiff's statements to Calvin and the photograph of Calvin lying dead; and (f) published on January 3 the photograph of Calvin undergoing medical treatment. The trial court dismissed plaintiff's action pursuant to section 2—615 of the Code of Civil Procedure. 735 ILCS 5/2—615 (West 1992).

■ When ruling on a section 2—615 motion to dismiss, the trial court must accept as true all well-pleaded facts and all reasonable inferences that can be drawn therefrom. *Palmer v. Chicago Park District*, 277 Ill. App. 3d 282, 284 (1995). The trial court should not

---

[1]Plaintiff did not attach a copy of the January 1 and January 3 newspaper articles to her amended complaint. Therefore, they did not become part of the complaint (see *Hazel Crest Federation of Teachers, Local 2077 v. Board of Education of School District 152¹/₂*, 206 Ill. App. 3d 69, 80-81 (1990)), and normally we would not consider them when analyzing whether the trial court properly granted the Tribune's section 2—615 motion to dismiss. However, plaintiff attached copies of the articles to her response to the Tribune's motion to dismiss, and she also tendered the articles to the trial judge during argument on the motion. The trial judge stated he had seen the articles, and he considered their content when ruling on the motion. Under these circumstances, we will consider the January 1 and January 3 articles, which are made part of the record on appeal. See *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17 (1995).

dismiss a complaint under section 2—615 unless it clearly appears no set of facts could be proved under the pleadings entitling plaintiff to relief. *Palmer*, 277 Ill. App. 3d at 284. In making such a determination, the trial court must interpret the allegations of the complaint in the light most favorable to plaintiff. *Palmer*, 277 Ill. App. 3d at 284. Accordingly, we also analyze plaintiff's complaint, although only allegations, in the light most favorable to plaintiff.

■ The public disclosure of private facts is one branch of the tort of invasion of privacy. *Roehrborn v. Lambert*, 277 Ill. App. 3d 181, 184 (1995); *Beverly v. Reinert*, 239 Ill. App. 3d 91, 97 (1992). To state a cause of action for the public disclosure of private facts, plaintiff must plead (1) the Tribune gave publicity; (2) to her private, not public, life; (3) the matter publicized was highly offensive to a reasonable person; and (4) the matter publicized was not of legitimate public concern. See *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 978 (1990) (which adopted the Restatement (Second) of Torts' definition of the public disclosure of private acts).

■ First, we address whether plaintiff pleaded facts sufficient to assert the first prong of the tort: the publicity element. The comments to the Restatement (Second) of Torts state that publicity means "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. *** [A]ny publication in a newspaper or a magazine, even of small circulation *** is sufficient to give publicity [to a private fact]." Restatement (Second) of Torts § 652D, Comment *a*, at 384-85 (1977).

Plaintiff satisfied the publicity element of the tort by pleading a cause of action premised on the Tribune's publishing her statements and the photographs of her son in the January 1 and January 3 editions of the Chicago Tribune.

■ Next, we address whether plaintiff pleaded facts sufficient to assert the second prong of the tort: the facts disclosed in the Chicago Tribune were private. The circuit court found plaintiff failed to plead that the matter published was private, not public. The court stated, "When you talk aloud in a public place, *** how can you say that you have an expectation of privacy? *** The reporting was of at least a semi-public statement of the plaintiff *** said aloud voluntarily with knowledge of [Tribune personnel] present."

We disagree with the trial court's finding as a matter of law that Calvin's hospital room was a "public place" and thus plaintiff's statements in that room could not be private. Plaintiff's complaint clearly pleads that Calvin was in a private room, and, as the court must accept all well-pleaded facts as true, the trial court's failure to accept

that fact as true contributed to the error in its analysis. Further, Black's Law Dictionary defines "public place" as:

"A place to which the general public has a right to resort; not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many persons and usually accessible to the neighboring public (*e.g.* a park or public beach). Also, a place in which the public has an interest as affecting the safety, health, morals, and welfare of the community. A place exposed to the public, and where the public gather together or pass to and fro." Black's Law Dictionary 1107 (5th ed. 1979).

The general public surely had no right to resort in Calvin's private hospital room, nor did the public have an interest in that room that affected their safety, health, morals, or welfare. Thus, Calvin's hospital room was *not* a "public place."

We also disagree with the trial court's finding as a matter of law that plaintiff's statements were not private because she made them in front of Tribune personnel. In support, we cite two cases from other jurisdictions that faced a similar issue, *Virgil v. Time, Inc.*, 527 F.2d 1122 (9th Cir. 1975), and *Y.G. v. Jewish Hospital*, 795 S.W.2d 488 (Mo. App. 1990). The plaintiff in *Virgil* willingly gave an interview to Sports Illustrated. *Virgil*, 527 F.2d at 1124. Before Sports Illustrated published the article, plaintiff indicated his desire to "stop the story." *Virgil*, 527 F.2d at 1124. Nevertheless, Sports Illustrated published the article, and plaintiff brought a public disclosure of private facts action against defendant. The trial court denied defendant's motion for summary judgment, and defendant brought an interlocutory appeal. *Virgil*, 527 F.2d at 1123.

On appeal, defendant argued that by voluntarily talking to Sports Illustrated, plaintiff had rendered public the facts disclosed. *Virgil*, 527 F.2d at 1126. The Ninth Circuit of the United States Court of Appeals disagreed:

"Talking freely to someone is not in itself *** making public the substance of the talk. There is an obvious and substantial difference between the disclosure of private facts to an individual—a disclosure that is selective and based on a judgment as to whether knowledge by that person would be felt to be objectionable—and. the disclosure of the same facts to the public at large. ***

Talking freely to a member of the press, knowing the listener to be a member of the press, is not then in itself making public. Such communication can be said to anticipate that what is said will be made public since making public is the function of the press, and accordingly such communication can be construed as a consent to publicize. Thus if publicity results it can be said to have been

consented to. However, if consent is withdrawn prior to the act of publicizing, the consequent publicity is without consent." *Virgil*, 527 F.2d at 1127.

In *Y.G.*, plaintiffs participated in Jewish Hospital's *in vitro* fertilization program. *Y.G.*, 795 S.W.2d at 492. Plaintiffs brought a public disclosure of private facts action against the hospital and a television station after the station televised them while they were attending a hospital function commemorating the success of the program. *Y.G.*, 795 S.W.2d at 492. Plaintiffs pleaded that before the hospital function, they had told only Y.G.'s mother about their attempt to procreate. *Y.G.*, 795 S.W.2d at 492. The trial court granted Jewish Hospital's motion to dismiss for failure to state a cause of action. *Y.G.*, 795 S.W.2d at 493.

On appeal, defendants argued plaintiffs waived any right to privacy by attending the function. *Y.G.*, 795 S.W.2d at 502. The court held plaintiffs did not waive the right to privacy because the hospital assured them no publicity would occur and plaintiffs twice refused interviews. *Y.G.*, 795 S.W.2d at 502. The court also noted plaintiffs pleaded in their complaint that the hospital assured them only persons involved in the *in vitro* program would attend the function. *Y.G.*, 795 S.W.2d at 502. The court held that by choosing to disclose their participation to other *in vitro* couples, plaintiffs did not waive their right to keep their *in vitro* participation private with respect to the general public. *Y.G.*, 795 S.W.2d at 502. The court reversed the trial court's order dismissing plaintiffs' cause of action. *Y.G.*, 795 S.W.2d at 503.

We glean from *Virgil* and *Y.G.* that plaintiff's allegation here that she spoke to her dead son in front of Tribune personnel in Cook County Hospital is not dispositive as to whether her statements were private or public. Rather, the analysis must focus on whether plaintiff alleged that she informed the Tribune personnel that she wished to keep the content of those statements private with respect to the general public. Plaintiff pleaded in her amended complaint that around the time of her son's death in Cook County Hospital, she informed the Tribune reporter who was in the hospital that she wished to make no statement to the Tribune regarding her son's death. Taking these well-pleaded facts as true for purposes of the section 2—615 motion to dismiss, we think a jury could find plaintiff's conversation with that reporter sufficient to put the Tribune on notice it was not to disclose to the general public the statements she made in the hospital to her son. Accordingly, plaintiff pleaded sufficient facts to allege her statements to her son were private, not public.

■ The Tribune argues, though, that we should affirm the trial

court's dismissal order because plaintiff's complaint seeks to recover damages for the invasion of her *son's* privacy. The Tribune contends the right of privacy is purely personal and plaintiff must prove invasion of her own privacy before she can recover. In support of this argument, the Tribune cites *Bradley v. Cowles Magazines, Inc.*, 26 Ill. App. 2d 331 (1960). *Bradley* involved the murder of a 14-year-old boy. Five months after his death, Look magazine published the first of two articles about the murder. One year later, Look published its second article. *Bradley*, 26 Ill. App. 2d at 332. The issue on appeal was whether the right of privacy extended to provide damages for the anguish of the boy's mother, caused by the publication concerning the murder of her son, although the magazine did not feature or substantially publicize her. *Bradley*, 26 Ill. App. 2d at 333. The court held the mother could not bring the action because the articles did not invade *her* right to privacy. *Bradley*, 26 Ill. App. 2d at 336.

In the present case, the complaint alleges the Tribune did substantially publicize plaintiff on January 1, 1993, by publishing a photograph of her dead son, Calvin, *and* by identifying her as Calvin's mother and publishing her statements to Calvin. Thus, plaintiff's cause of action for the January 1 publication can go forward because it is based on *her* privacy interest. However, plaintiff also pleaded an invasion of privacy for the January 3, 1993, publication that included the December 30 photograph of Calvin undergoing medical treatment. The January 3 publication never mentions plaintiff and thus does not invade *her* privacy. Accordingly, pursuant to *Bradley*, we hold plaintiff's complaint for invasion of privacy based on the January 3 publication must be dismissed.

■ Next, we address whether plaintiff's complaint pleaded facts sufficient to assert the third prong of the public disclosure of private facts tort: the matter published was highly offensive to a reasonable person. Having determined the January 3 publication cannot be the basis for plaintiff's privacy action, we examine only the January 1 publication.

On January 1, 1993, the Tribune published a front-page story on Chicago's record homicide rate that included a discussion of Calvin's murder and an unauthorized photograph taken of Calvin while Tribune personnel barred plaintiff from entering the hospital room to see him. The article also included the following quotes from plaintiff's statements to her son that she made after refusing the Tribune reporter's request for a public statement: "I love you, Calvin. I have been telling you for the longest time about this street thing." "I love you, sweetheart. That is my baby. The Lord has taken him, and I don't have to worry about him anymore. I accept it." "They took him

out of this troubled world. The boy has been troubled for a long time. Let the Lord have him."

In determining whether plaintiff pleaded facts sufficient to assert that the January 1 publication was highly offensive to a reasonable person, we examine the allegations of the context, conduct and circumstances surrounding the publication as well as the publication itself. See *Huskey v. National Broadcasting Co.*, 632 F. Supp. 1282, 1289 (N.D. Ill. 1986); *Miller v. National Broadcasting Co.*, 187 Cal. App. 3d 1463, 1483, 232 Cal. Rptr. 668, 678 (1986). We are also mindful of the following comment to the Restatement (Second) of Torts:

> "Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part. Thus he must expect the more or less casual observation of his neighbors as to what he does, and that his comings and goings and his ordinary daily activities, will be described in the press as a matter of casual interest to others. \*\*\* Even minor and moderate annoyance, as for example through public disclosure of the fact that the plaintiff has clumsily fallen downstairs and broken his ankle, is not sufficient to give him a cause of action under the rule stated in this Section. It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises." Restatement (Second) of Torts § 652D, Comment *c*, at 387 (1977).

From the allegations in plaintiff's complaint, reasonable people could differ and could find that the Tribune's January 1 publication was not about an ordinary daily activity or incident in plaintiff's life; rather, the publication concerned an extraordinarily painful incident in plaintiff's life, when she first set eyes on her minor son after he had been shot to death. Further, reasonable people could differ and could find that the Tribune's publication was not a minor or moderate annoyance, especially since the photograph of Calvin it published on January 1 was taken while Tribune staffers prevented plaintiff from seeing Calvin, and its quotation from plaintiff's grief-stricken statements to Calvin came after plaintiff expressly told the Tribune reporter she wanted to make no public statement about her son's death. Because reasonable people could differ as to these facts, we believe a jury could find the Tribune's January 1 publication highly offensive to a reasonable person. Plaintiff therefore has pleaded facts sufficient to assert the third prong of the public disclosure of private facts tort.

■ Next, we address whether plaintiff pleaded facts sufficient to assert the fourth prong of the tort: the matter publicized was not of legitimate public concern. The Tribune contends this issue is con-

trolled by *Beresky v. Teschner*, 64 Ill. App. 3d 848 (1978). In *Beresky*, plaintiffs brought a public disclosure of private acts action against the publisher of a newspaper that printed an article about their 18-year-old son, Cary. The article reported Cary's death from a drug overdose, and stated he had been a major seller and user of heroin and a fugitive from the law. *Beresky*, 64 Ill. App. 3d at 850. The trial court dismissed the cause of action, finding the published matter was of legitimate concern to the public. *Beresky*, 64 Ill. App. 3d at 854. The appellate court affirmed: "No one *** would deny that the subject of drug use is a matter of great controversy and of great public concern ***." *Beresky*, 64 Ill. App. 3d at 856.

The Tribune argues the subject of the January 1 article was the death toll from guns and gang warfare, which, like the subject of drug use, is of legitimate public concern. In our view, however, the relevant inquiry is whether *the photograph of plaintiff's dead son and her statements to him* are of legitimate public concern.

The Tribune argues plaintiff's statements to her son, Calvin, and the photograph of him give "an identity and a voice to the victims" of gang violence and, therefore, are of legitimate public interest. However, members of the public itself, a jury, could find the January 1 article, which reported Calvin's gang-related shooting as well as the futile attempts to revive him by opening his chest and massaging his heart, did not need plaintiff's intimate statements to Calvin or his photograph to convey the human suffering behind gang violence.

The Tribune also contends plaintiff's statements to Calvin and the photograph of him are of legitimate public concern because Calvin's murder in a gang-related shooting transformed Calvin and his mother into involuntary public figures about whom the public was entitled to be informed. In support, the Tribune cites the following comment to the Restatement (Second) of Torts:

> "*Involuntary public figures.* There are other individuals who have not sought publicity or consented to it, but through their own conduct or otherwise have become a legitimate subject of public interest. They have, in other words, become 'news.' Those who commit crime or are accused of it may not only not seek publicity but may make every possible effort to avoid it, but they are nevertheless persons of public interest, concerning whom the public is entitled to be informed. The same is true as to those who are the victims of crime or are so unfortunate as to be present when it is committed ***. These persons are regarded as properly subject to the public interest, and publishers are permitted to satisfy the curiosity of the public as to its heroes, leaders, villains and victims, and those who are closely associated with them." Restatement (Second) of Torts § 652D, Comment *f*, at 389 (1977).

The Tribune contends the publication of the photograph of plaintiff's son lying dead in the hospital, and plaintiff's statements to him, satisfied the public's curiosity of a newsworthy event and therefore no liability should follow. However, "[t]he extent of the authority to make public private facts is not *** unlimited. *** In determining what is a matter of legitimate public interest, account must be taken of the customs and conventions of the community; and in the last analysis what is proper becomes a matter of the community mores. The line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern." Restatement (Second) of Torts § 652D, Comment *h*, at 391 (1977).

A jury could find that a reasonable member of the public has no concern with the statements a grieving mother makes to her dead son, or with what he looked like lying dead in the hospital, even though he died as the result of a gang shooting. Accordingly, plaintiff has pleaded sufficient facts to assert the fourth prong of the public disclosure of private facts tort.

In sum, we hold plaintiff's amended complaint states a cause of action for public disclosure of private facts with respect to the January 1, 1993, Tribune publication. It does not state a cause of action for the January 3, 1993, publication.

■ Next, we address whether the trial court properly granted the Tribune's section 2—615 motion to dismiss plaintiff's claim for intentional infliction of emotional distress. To state a cause of action for intentional infliction of emotional distress, plaintiff must allege facts establishing: (1) the Tribune's conduct was extreme and outrageous; (2) the Tribune either intended its conduct should inflict severe emotional distress or knew a high probability existed its conduct would cause severe emotional distress; and (3) the Tribune's conduct in fact caused severe emotional distress. *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994).

The factual allegations in plaintiff's intentional infliction of emotional distress count are the same as in her invasion of privacy count. The trial court determined the Tribune's conduct was not extreme and outrageous as a matter of law, and it dismissed the complaint. Extreme and outrageous conduct sufficient to create liability for intentional infliction of emotional distress is defined as conduct going beyond all possible bounds of decency. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976). Such conduct must extend beyond mere insults, indignities, threats, annoyances, petty oppressions or trivialities. *Doe*, 161 Ill. 2d at 392.

This case is similar to *Miller v. National Broadcasting Co.*, 187 Cal. App. 3d 1463, 232 Cal. Rptr. 668 (1986). There, an NBC camera crew entered Dave and Brownie Miller's apartment without their consent to film the activities of paramedics called to the Miller home to administer life-saving techniques to Dave Miller, who had suffered a heart attack in his bedroom. NBC used the film on its nightly news without obtaining anyone's consent, and after Brownie Miller and her daughter complained to NBC, it used portions of the film in a commercial advertising an NBC mini-documentary about the paramedics' work. *Miller*, 187 Cal. App. 3d at 1469, 232 Cal. Rptr. at 670.

The issue on appeal was whether Brownie had stated a cause of action for intentional infliction of emotional distress. The appellate court found that she had:

"With respect to [Brownie's] cause of action, we leave it to a reasonable jury whether the defendants' conduct was 'outrageous.' Not only was her home invaded without her consent, but the last moments of her dying husband's life were filmed and broadcast to the world without any regard for the subsequent protestations of [Brownie and her daughter] to the defendants. Again, the defendants' lack of response to these protestations suggests an alarming absence of sensitivity and civility. The record reflects that defendants appeared to imagine that they could show or not show Dave Miller in extremis at their pleasure, and with impunity." *Miller*, 187 Cal. App. 3d at 1488, 232 Cal. Rptr. at 682.

■ Similarly, plaintiff pleaded that the Tribune entered Calvin's room on December 31 without plaintiff's consent in order to photograph him as he lay dying, and even prevented plaintiff from entering until they had finished. Although plaintiff told the Tribune reporter in the hospital that she wanted to make no public statement about Calvin's death, the Tribune published a story on January 1 co-authored by that same reporter featuring plaintiff's comments to Calvin and a photograph of his dead body. Reasonable people could find that, like NBC's actions in *Miller*, the Tribune's actions on December 31 and January 1 suggest an alarming lack of sensitivity and civility, and reasonable people, in essence, a jury, could find the Tribune's behavior extended beyond mere indignities, annoyances, or petty oppressions and constituted extreme and outrageous conduct.

Further, reasonable people, a jury, could find that the Tribune knew a high probability existed its actions on December 31 and January 1 would cause plaintiff to suffer severe emotional distress. Plaintiff also adequately pleaded that she did in fact suffer severe emotional distress.

The Tribune argues, though, that its truthful reporting of plaintiff's son's death cannot be the predicate for an emotional distress claim. In support, the Tribune cites a United States Supreme Court case on the invasion of the right of privacy that holds under the first amendment there can be no recovery if a newspaper lawfully obtains truthful information about a matter of public significance, unless a need exists to further a state interest of the highest order. See *The Florida Star v. B.J.F.*, 491 U.S. 524, 105 L. Ed. 2d 443, 109 S. Ct. 2603 (1989). The Restatement (Second) of Torts in effect has adopted this holding in the fourth prong of the public disclosure of private facts tort by stating that recovery is allowed only if the matter published was not of legitimate public concern. We can see no reason why recovery should be allowed in an emotional distress case for truthful information of legitimate public concern, if it is not allowed in an invasion of privacy case; the first amendment implications are present under both causes of action. Accord *Upchurch v. New York Times Co.*, 314 S.C. 531, 431 S.E.2d 558 (1993); *Cape Publications, Inc. v. Bridges*, 423 So. 2d 426 (Fla. App. 1982). Therefore, to state a cause of action for intentional infliction of emotional distress based on the January 1 article that included the photograph of plaintiff's son and her statements to him, plaintiff here must plead that such matter was of no legitimate public concern. As discussed earlier, plaintiff has pleaded sufficient facts to aver no legitimate public concern existed over the photograph and her statements.

We hold plaintiff stated a cause of action for intentional infliction of emotional distress caused by the Tribune when it barred her from seeing her dead son on December 31 while it photographed him, and when it published the January 1 article featuring her statements to her son and the photograph of him lying dead.

Plaintiff also pleaded intentional infliction of emotional distress for the January 3, 1993, article that included one of the December 30, 1992, photographs of her son undergoing medical treatment. The Tribune argues a cause of action based on the intentional infliction of emotional distress is a purely personal one. Therefore, because the January 3 publication never mentions plaintiff, her action must be dismissed. In support, the Tribune cites *Bradley v. Cowles Magazine, Inc.*, which we discussed earlier in this opinion. However, *Bradley* was a right to privacy case, not an intentional infliction of emotional distress case. Thus, *Bradley* provides no support for the Tribune's argument.

Further, the Restatement (Second) of Torts recognizes in some instances a plaintiff *can* bring an intentional infliction of emotional

distress action based on conduct directed at a third person. Section 46(2) of the Restatement provides:

> "Where [outrageous] conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> > (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
> >
> > (b) to any other person who is present at the time, if such distress results in bodily harm." Restatement (Second) of Torts § 46(2), at 72 (1965).

The Tribune's publication of the January 3 article four days after plaintiff's son's death, which did not include any mention of plaintiff, does not fall under section 46(2)(a) or (b) of the Restatement. Accordingly, plaintiff cannot recover for intentional infliction of emotional distress based on the Tribune's January 3 publication.

Similarly, plaintiff's intentional infliction of emotional distress action based on the Tribune's conduct on December 30, 1992, when it photographed her son undergoing medical treatment, also must be dismissed. Plaintiff did not allege in her amended complaint that she was present when the Tribune photographed her son on December 30. Therefore, the Tribune's December 30 conduct does not fall under section 46(2)(a) or (b) of the Restatement.

Plaintiff argues the Tribune also committed intentional infliction of emotional distress on the one-year anniversary of her son's death when it again published the photograph of him lying dead in the hospital. However, plaintiff did not allege this fact in her amended complaint, and, therefore, we do not consider it on appeal.

■ Finally, we determine the trial court properly dismissed plaintiff's claim for battery because plaintiff never pleaded harmful or offensive contact by the Tribune. See *Cohen v. Smith*, 269 Ill. App. 3d 1087, 1090 (1995).

Before concluding, we address two points raised by the dissent. First, the dissent argues that our opinion here assumes a cause of action for intrusion upon the seclusion of another exists in Illinois. We *never* assume (explicitly or implicitly) that a cause of action for intrusion on seclusion exists in Illinois. Our analysis focuses *solely* on whether plaintiff's complaint states a cause of action for public disclosure of private facts and the intentional infliction of emotional distress.

Second, the dissent argues that the trial court properly determined, as a matter of law, that plaintiff's complaint failed to state a cause of action for the public disclosure of private facts and the

intentional infliction of emotional distress. This is a complex case, one in which reasonable minds could differ as to whether the facts pleaded by plaintiff regarding the January 1 publication constitutes the public disclosure of private facts and the intentional infliction of emotional distress. Since reasonable people could come to different results, it was error for the trial court to dismiss the case at the pleading stage. A jury should decide whether the facts pleaded here regarding the January 1 publication, if proved, merits recovery by plaintiff.

Affirmed in part and reversed in part; remanded for further proceedings consistent with this opinion.

THEIS, J., concurs.

JUSTICE CAHILL, dissenting:
I respectfully dissent from the majority conclusion that the complaint before us states a cause of action for invasion of privacy and intentional infliction of emotional distress based upon the January 1, 1993, edition of the Chicago Tribune. While I agree that the January 3, 1993, edition does not state a cause of action, I disagree with the reasoning of the majority in reaching that conclusion. I would affirm the trial court in all respects.

Three fundamental problems surface with the majority approach. To each point in turn.

First, count III of the complaint, directed at the Tribune for invasion of privacy, alleges five separate acts: entry of the hospital room without the consent of Green; preventing Green from entering the same room; photographing her son; eavesdropping on Green's words to her dead son; and publishing these words and a photograph of her dead son. The first four allegations have nothing to do with the tort of public disclosure of private facts. If they state a cause of action, it is under section 652B of the Restatement: an unreasonable intrusion upon the seclusion of another. Although plaintiff's complaint describes her cause of action as one of publication of private facts alone, it is the allegations that define the cause of action and not the name or title that may be used. *Barnes v. Southern Ry. Co.*, 116 Ill. 2d 236, 244, 507 N.E.2d 494 (1987).

The tort of intrusion upon the plaintiff's seclusion and the tort of publication of private facts are treated as a single cause of action in the complaint and by the majority. They are separate torts, as recognized by Dean Prosser, who first proposed them (W. Prosser, *Privacy*, 48 Cal. L. Rev. 383, 389 (1960)), the Restatement of Torts,

which adopts Prosser's categories (Restatement (Second) of Torts § 652A through E (1977)), and almost all state and federal courts that track the Restatement in a privacy case.

This is more than a quibble over a distinction that does not amount to a significant difference. See *Miller v. National Broadcasting Co.*, 187 Cal. App. 3d 1463, 1490, 232 Cal. Rptr. 668, 683 (1986) (cited by the majority, where the torts are clearly distinguished).

Intrusion does not implicate the first amendment. Publication by a media defendant of facts alleged to be private triggers the first amendment debate about the nature of the facts published, whether the plaintiff is an involuntary public figure, and whether the facts are of legitimate public concern. When the elements of the torts are mingled as they are here, we are led down an analytical path that ignores the distinction between the way information is gathered and its subsequent publication. If this photograph had been taken on the street where Calvin Green was slain, and his mother's tragic words recorded as she stood over him, I doubt I would be writing this dissent. That Calvin and his mother were tragic involuntary public figures in a story of grim but legitimate public interest is self-evident. The alleged intrusion cannot change their status or diminish the newsworthiness of the story.

Illinois appellate authority, while agreeing on the elements of the intrusion tort, is split on whether the cause of action is recognized under Illinois law. The First District of the Illinois Appellate Court has held that Illinois courts do not recognize a cause of action for intrusion upon the seclusion of another. *Morton v. Hartigan*, 145 Ill. App. 3d 417, 427, 495 N.E.2d 1159 (1986). The third district, in *Melvin v. Burling*, 141 Ill. App. 3d 786, 490 N.E.2d 1011 (1986), held otherwise. The one supreme court case to review the appellate decisions, *Lovgren v. Citizens First National Bank*, 126 Ill. 2d 411, 534 N.E.2d 987 (1989), chose not to resolve the issue.

The reluctance of our supreme court to recognize a cause of action for intrusion may reflect in part an awareness that elements of the tort overlap established common law actions (trespass, for example) and several recent criminal statutes inspired by the concern for privacy. Among the latter: communications consumer privacy act; obscene phone call act; telecommunications line tapping act; telephone line interference act; peephole installation act; eavesdropping; residential picketing. An action for intrusion may be a useful civil complement to these criminal statutes, but given the cautionary language of the court in *Lovgren*, recognition of the tort should await guidelines from the supreme court, particularly in first amendment cases.

For the sake of argument, I will assume, with the majority, that a cause of action for intrusion exists in Illinois. We must then decide whether it was properly pled against the Tribune.

That the privacy right is personal to the plaintiff and cannot be borrowed from another, even a relative, and does not survive death is recognized and well surveyed by the California Appellate Court in *Miller*. See *Miller*, 187 Cal. App. 3d at 1485, 232 Cal. Rptr. at 680; see also *Flynn v. Higham*, 149 Cal. App. 3d 677, 683, 197 Cal. Rptr. 145, 149 (1983); *Rozhon v. Triangle Productions*, 230 F.2d 359 (7th Cir. 1956). The majority here appears to adopt a theory, without citation to authority, that a bereaved relative in a private hospital room enjoys the same privacy right as the patient, and that the right extends to whatever words might be uttered without regard to their content and to a photograph of the dead patient. The complaint does not allege the Tribune was in the room without the consent of the hospital. It assumes a privacy right in Green, even though the Tribune personnel were allowed into the room before her. Whether Green has a cause of action against the hospital is not an issue in this appeal.

The intrusion analysis includes weighing the "context," "circumstances," and "setting"—"the private affairs" in Prosser's words (48 Cal. L. Rev. at 384)—intruded upon to decide whether the intrusion is "offensive" as a matter of law. On questions of law and fact in privacy cases the following should be noted from cases the majority cites: "The determination of ['private matter'] is a matter for the court to decide ***." *Y.G. v. Jewish Hospital*, 795 S.W.2d 488, 499 (Mo. App. 1990), citing *Barber v. Time, Inc.*, 159 S.W.2d 291, 295 (Mo. 1942). "[T]here is a preliminary determination of 'offensiveness' which must be made by the court in discerning the existence of a cause of action for intrusion." *Miller*, 187 Cal. App. 3d at 1483, 232 Cal. Rptr. at 678.

When the intrusion is into a plaintiff's home, the cases surveyed in *Miller* and *Y.G.* at least imply that intrusion alone may state a cause of action, no matter how benign the activity observed. But when, as here, the intrusion occurs in a context, setting, and under circumstances where a home is not involved, the *nature* of the "private affairs" revealed is an issue. "Private affairs" as a component of the tort of intrusion is invariably equated with "private facts." See *Miller*, 187 Cal. App. 3d 1463, 232 Cal. Rptr. 668; *Y.G.*, 795 S.W.2d 488. Almost all the cases cited in *Miller* and *Y.G.* involve an intrusion followed by publicity and publication, where "private affairs" and "private facts" are synonymous.

Outside the home, the nature of what is observed or overheard is

an important element in every "private fact" case that addresses the issue. See *Lovgren*, 126 Ill. 2d 411, 534 N.E.2d 987; *Dwyer v. American Express Co.*, 273 Ill. App. 3d 742, 652 N.E.2d 1351 (1995); *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 560 N.E.2d 900 (1990); *Melvin v. Burling*, 141 Ill. App. 3d 786, 490 N.E.2d 1011 (1986); see also *Y.G.*, 795 S.W.2d 488. The cases that label a fact "private" and the mere awareness of it by another "offensive" involve "peculiarly private" facts: a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate personal nature where nonconsensual revelation causes embarrassment to the person. See generally 62A Am. Jur. 2d *Privacy* § 155, at 764 (1990).

So we must decide whether, as a matter of law, the photograph and the words in this case were "offensive." The photograph of a dead person, even one undergoing treatment, does not immediately suggest offensiveness, nor does plaintiff plead characteristics to suggest offensiveness, such as a photograph of an autopsy, gun wounds, lacerations, or mutilations.

The argument that overhearing words of grief are offensive, as a matter of law, in the context of "peculiarly private" or "embarrassing," is even less persuasive. If anything, the words here place Green in a sympathetic light—a light I believe—in which all reasonable persons would look upon her with compassion and understanding. I have not found a single reported case where the private words of a plaintiff that cast her in a favorable light have been held actionable based upon the circumstances under which they were uttered. The majority opinion stands alone.

Since I would find that the tort of intrusion has not been adequately pled, even if recognized in Illinois, and that "private affairs" and "private facts," as defined by case law, are not implicated, I would not reach the issue of publication. But, assuming with the majority, there has been an intrusion and the facts gleaned from it are "peculiarly private" and "embarrassing," this cause of action collides with the first amendment and raises my second problem with the majority opinion.

The tort of giving publicity to the private life of a person may occur when the matter publicized "would be highly offensive to a reasonable person," but only when the matter publicized "is not of legitimate concern to the public." Restatement (Second) of Torts § 652D, at 383 (1977). The jury is not called upon to decide what is "highly offensive" until a court has determined that the matter is first, private, and second, offensive.

The first amendment guarantees of free speech and free press assure the right of the press to publish news. *Cox Broadcasting Corp. v.*

*Cohn*, 420 U.S. 469, 43 L. Ed. 2d 328, 95 S. Ct. 1029 (1975). A media defendant is constitutionally permitted to publicize facts about an individual's private life when those facts are newsworthy.

The majority quotes the Restatement at length, yet omits an important paragraph of the comments to section 652D—matters regarded as "news."

> "Authorized publicity includes publications concerning homicide and other crimes, arrests, police raids, suicides, marriages and divorces, accidents, fires, catastrophes of nature, a death from the use of narcotics, a rare disease, the birth of a child to a twelve-year-old girl, the reappearance of one supposed to have been murdered years ago, a report to the police concerning the escape of a wild animal and many other similar matters of genuine, even if more or less deplorable, popular appeal." 3 Restatement (Second) of Torts § 652D, Comment *g*, at 390-91 (1977).

The majority finds that plaintiff states a cause of action based on the reasoning that "a jury could find" the article "did not need" the photo of Calvin and plaintiff's statements to him. That may well be, but it is not for a jury to decide how a news story should be edited. To question whether the newspaper should have omitted certain details from a story of legitimate public concern amounts to editorial second-guessing rather than legal analysis. Where the general content of an article is newsworthy, editors must be allowed a measure of discretion to determine how the article will be written and what details will be included. "The editorial judgment of what is 'newsworthy' is not so readily submitted to the *ad hoc* review of a jury ***." *Anderson v. Fisher Broadcasting Co.*, 300 Or. 452, 455, 712 P.2d 803, 809 (1986).

Here, the article about deaths from gang violence and the photograph, charts, and statistics accompanying the article are matters of legitimate public concern. The statements by plaintiff to her son and his photo are closely related to the subject matter of the news story, which documented the fact and effect of gang violence on the offenders and the victims. The subject is of public interest. In the sense of serving an appropriate news function, the quotation and photograph contribute constructively to the impact of the article. They give a personalized frame of reference, allowing the reader to relate, perceive, and understand that the class of victims is not limited to gang members. They verify the article's message that victims include the community, friends, and family. They show Calvin Green was not only the 934th person to die from gang violence in 1992—he was a young man with a loving parent who is also a victim of gang violence. The photograph and the statements heighten the

impact and credibility of the article and prevent an impression that gangs are a remote or hypothetical problem.

To quote from the Supreme Court of Massachusetts:

"Doubtless many persons at such a time would be distressed or annoyed by a'publication of the sort here involved. It is a time above all others when they would prefer to be spared the anguish of wide or sensational publicity. But if the right asserted here were sustained, it would be difficult to fix its boundaries. *** Many things which are distressing or may be lacking in propriety or good taste are not actionable." *Kelley v. Post Publishing Co.*, 327 Mass. 275, 277, 98 N.E.2d 286, 287 (1951).

The right of privacy must give way when balanced against the publication of matters of public interest to insure the "uninhibited, robust and wide-open" discussion of legitimate public issues. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 701, 84 S. Ct. 710, 721 (1964).

The third problem with the majority opinion: the facts pled in the intentional infliction of emotional distress count are well below the threshold established in Illinois Supreme Court decisions. In *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 360 N.E.2d 765 (1976), the supreme court explained: " 'Liability [for the tort] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency ***.' " *Public Finance*, 66 Ill. 2d at 90, quoting Restatement (Second) of Torts § 46, Comment *d* (1965). *Public Finance* was decided on the pleadings, with the issue of "severe" a question of law. The court continued: "The emotional distress must be *severe*. Although fright, horror, grief *** may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.' " (Emphasis in original.) *Public Finance*, 66 Ill. 2d at 90, quoting Restatement (Second) of Torts § 46, Comment *j* (1965). The actor must either intend that his conduct inflict severe emotional distress, or know there is a high probability the conduct will cause severe emotional distress, and the conduct must cause severe emotional distress. The intensity and duration of the distress are elements to be considered in determining its severity. *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806 (1988).

This case cannot fairly be compared to *Miller v. National Broadcasting Co.*, 187 Cal. App. 3d 1463, 232 Cal. Rptr. 668, as the majority suggests. The Tribune never invaded plaintiff's home and never used her words or the deceased's photograph to publicize its coverage of the story.

The facts alleged in this complaint measured by the words chosen by the supreme court in *Public Finance* to set the standard for the tort, do not amount to conduct that exceeds "all possible bounds" of decency. The distress the plaintiff suffered as a result of the conduct is not such that "no reasonable person could be expected to endure it." Cases where courts have allowed recovery for severe emotional distress tend to involve abusive language, threats, and extended harassment by the defendant. *Public Finance*, 66 Ill. 2d at 92. " '[L]iability usually has rested on a prolonged course of hounding by a variety of extreme methods.' " *Public Finance*, 66 Ill. 2d at 92, quoting W. Prosser, Torts 57 (4th ed. 1971).

There are, no doubt, cases in the pipeline where the phenomena of "info-mercials," "info-entertainment," "docu-dramas" and "re-enactments" blur the differences between legitimate news and pulp fiction. The shield of the first amendment may develop cracks as courts respond to this trend and the insensitive aggressiveness of legitimate news gatherers who must compete with the purveyors of soft core "information" to supply market demands. This case is not one of them.

I respectfully dissent.