**Linda Marie MINEER, etc., Plaintiff,**

v.

**Montel WILLIAMS, et al, Defendants.**

**No. Civ.A. 99–187.**

United States District Court,
E.D. Kentucky,
at Covington.

Feb. 3, 2000.

Eric C. Deters, Fort Mitchell, KY, for plaintiff.

Deborah H. Patterson, William H. Hollander, Wyatt, Tarrant & Combs, Louisville, KY, for defendants.

### OPINION & ORDER

BERTELSMAN, District Judge.

This matter is before the court on the motion of defendants to dismiss. Inasmuch as statements at the hearing were considered, the motion will be treated as one for summary judgment as well. FED. R.CIV.P. 12(b). Since the cause of action for invasion of privacy does not survive after death and the requisite elements for intentional infliction of emotional distress are absent, the motion must be granted and the complaint dismissed.

### FACTS

In October of 1997, a seventeen-year-old woman, Erica Fraysure, disappeared on a Friday night in Brooksville, Kentucky. Due to the facts surrounding the case, foul play is suspected in her disappearance. As of today, she has not been located.

Nearly a year later, on September 24, 1998, the Montel Williams Show—a national talk show—featured the psychic Sylvia Browne. This psychic appeared on the show to use her abilities and powers to assist the show's guests in obtaining information regarding their loved ones who were either dead or missing. Erica Fraysure's mother, Maggie Doherty, was one of the guests. After a video segment regarding the background of Erica's disappearance, the psychic and Ms. Doherty exchanged questions and answers concerning Erica. The psychic identified Erica's murderer as a man who at the time of the show was in prison.[1]

Thereafter, Ms. Doherty asked if anyone knew any information about the murder. The psychic answered affirmatively. In response to Ms. Doherty's question "What is this person's name?", the psychic said "Chris." Someone involved with the production of the Montel Williams Show made the decision to edit the sound so that the name of "Chris" could not be heard. However, according to plaintiffs anyone watching the show could discern that the name was "Chris" by watching a close-up of the psychic.

On September 25, 1998, plaintiff's son, Chris Mineer, shot and killed his girlfriend, Cameron Morehead, and then shot and killed himself. However, it is not alleged in the complaint that Chris had any knowledge of the September 24, 1998 Montel Williams Show.

A few months later, in January of 1999, Ms. Browne was again the featured guest of the Montel Williams Show. During the broadcast, Montel Williams and Ms. Browne implied that Chris Mineer was determined to be responsible for the disappearance and presumed death of Erica Fraysure. Montel Williams made the following comments to exemplify the telepathic powers of Ms. Browne:

> He murdered his girlfriend and was implicated in the case that Sylvia talked about. So if you want to wonder whether or not this woman is talking fact or fiction, she gave up the name to this family during the break, and the next thing you know, the guy who probably committed the murder to begin with, realized the law is on my tail, he killed himself and his other girlfriend.[2]

> Ms. Browne responded, "That's what the lieutenant told me too."

On September 22, 1999, Mineer's mother filed this lawsuit against Montel Williams, Sylvia Browne, three producers and two corporate entities on behalf of herself and

---

1. This did not refer to plaintiff's son, Chris Mineer.

2. It is agreed by the parties that Erica Fraysure was not the "girlfriend" of Chris Mineer, although they knew each other.

the estate of her deceased son. The complaint alleges the above facts and further that the lieutenant had made no statement that Chris Mineer was ever a suspect in the disappearance of Erica Fraysure and no such comment was made by any officer on the case.

## PRIVACY

Plaintiff has not asserted a claim for libel or slander. Undoubtedly, this is because a Kentucky[3] statute specifically provides that a claim for libel or slander does not survive the death of the person libeled. Ky.Rev.Stat.Ann. § 411.140 (Michie 1992). This statute reads:

**WHAT ACTION SHALL SURVIVE**

No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative, heir or devisee, in the same manner as causes of action founded on contract.

Plaintiff relies on the statute to argue that her false light privacy claim survives her son's death.[4] After careful consideration, the court must reject this argument.

The Supreme Court of Kentucky adopted the principles for invasion of privacy as enunciated in the RESTATEMENT (SECOND) OF TORTS (1976) in *McCall v. Courier–Journal and Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky.1981), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982). The key section reads as follows:

Sec. 652A.  General Principle

1.  One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

2.  The right to privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another . . .; or

(b) appropriation of the other's name or likeness . . .; or

(c) unreasonable publicity given to the other's private life . . ., or

(d) *publicity that unreasonably places the other in a false light before the public. . . .* (Emphasis added).

■  The two basic requirements to sustain an action under subsection (d), which is the only provision on which plaintiff relies, are: (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed. RESTATEMENT (SECOND) OF TORTS § 652E (1976).

■  Plaintiffs rely on this fourth branch of the tort in the allegations that defendants "portrayed and/or placed Christopher Mineer in a false light that would be highly offensive to a reasonable person." (Complaint paragraphs 30–32).

The court notes, without deciding, that the facts of this case might well meet the criteria for a false light privacy claim by plaintiff's son if he were still living. The problem is that he is not living, and a privacy claim must be brought by a living person. This is specifically required by the RESTATEMENT (SECOND) OF TORTS § 652I, which provides:

Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded.

The point is emphasized by Comment b to that Section which states:

[i]n the absence of statute, the action for the invasion of privacy cannot be main-

---

3.  Since this is a diversity case, Kentucky law applies.

4.  Plaintiff asserts only an invasion of her deceased son's right of privacy and not of her own.

tained after the death of an individual whose privacy is invaded.

Plaintiff argues that the need for a statute to preserve her privacy right of action is met by Ky.Rev.Stat. § 411.140, *supra,* which preserves all rights of action after the death of the claimant "except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for personal injury."

Plaintiff invokes the ancient maxim *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of other things not mentioned). She argues that the specific mention of actions for libel and slander as abating with the death of the injured person, with no mention of privacy, implies that an action for privacy should survive.

The court holds, however, that there was no need to mention the right of privacy action specifically because one of its essential elements is that only a living person can sue for invasion of privacy. RESTATE-MENT OF TORTS (SECOND) § 652, *supra.*

In addition, plaintiff overlooks Ky.Rev. Stat.Ann. § 391.170 (Michie 1999), which was enacted in 1984 to protect that aspect of the right of privacy known as "the right of publicity." This statute reads:

**Commercial rights to use of names and likenesses of public figures.**

(1) The General Assembly recognizes that a person has property rights in his name and likeness which are entitled to protection from commercial exploitation. *The General Assembly further recognizes that although the traditional right of privacy terminates upon death of the person asserting it,* the right of publicity, which is a right of protection from appropriation of some element of an individual's personality for commercial exploitation, does not terminate upon death. (Emphasis added).

(2) The name or likeness of a person who is a public figure shall not be used for commercial profit for a period of fifty (50) years from the date of his death without the written consent of the executor or administrator of his estate.

As is readily apparent, the statute "recognizes that … the traditional right of privacy terminates upon death of the person asserting it" and thus, that a specific statute is necessary to preserve the right of publicity. It is noteworthy that the right of publicity is the only aspect of the privacy right which the General Assembly thought fit to preserve from abatement.

Reading Ky.Rev.Stat. § 391.170 and § 411.140 in *pari materia* and in the light of the Restatement, the court holds it is the intent of the Kentucky General Assembly that an invasion of privacy under the false light aspect of that right must be of a living person and any right of action therefore lapses upon the death of that person.

This is readily understandable since the landmark *McCall* decision recognizes that defamation and false light privacy are "closely allied." 623 S.W.2d at 888–89.

Professor David Elder suggests a good approach in his treatise on Kentucky defamation and privacy law:

The nonsurvival of "right of privacy" actions is not strictly required by K.R.S. § 411.140. It is suggested that the courts will look at the underlying "gist" of the action as they have in other survival cases. *Under such an approach those actions which are primarily directed to the protection of reputational interests—"false light" and "public disclosure"—may well be treated the same as defamation actions.* "Appropriation"-styled torts, "similar to impairment of a property right" "may" result in the action surviving the death of either party. RESTATEMENT (SECOND) OF TORTS § 6521, comment (b) (1977).

DAVID A. ELDER, KENTUCKY TORT LAW: DEFAMATION AND THE RIGHT OF PRIVACY, § 3.07 n. 22 (Michie 1983) (cross reference omitted) (emphasis added). *Cf. White v. Manchester Enterprise, Inc.,* 871 F.Supp. 934, 937 (E.D.Ky.1994); *accord* DAVID A. ELDER, THE LAW OF PRIVACY, § 1.3 (Clark, Boardman, and Callaghan 1991).

It is true that *Douglas v. Stokes,* 149 Ky. 506, 149 S.W. 849, 849–50 (1912), and *Sellers v. Henry,* 329 S.W.2d 214, 216 (Ky. 1959), permitted recovery for publishing photographs of the bodies of plaintiffs' deceased children. These cases, however, are examples of the exception to the general rule.[5] They also involve the breach of a confidential relationship, a factor that is missing here.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ In asserting this right of action, plaintiff relies solely on the broadcast made after her son's death. In this count, the complaint seeks redress only for the emotional distress suffered by plaintiff herself.

■ The Kentucky Supreme Court first recognized the tort of intentional or reckless infliction of emotional distress, also known as the tort of outrage, in *Craft v. Rice,* 671 S.W.2d 247 (Ky.1984). Under Kentucky law, Ms. Mineer must prove the following elements to state a cause of action for intentional infliction of emotional distress:

1. the wrongdoer's conduct was intentional or reckless;

2. the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

3. there was a causal connection between the wrongdoer's conduct and emotional distress; and

4. the emotional distress must be severe.

5. The general rule that an action for invasion of privacy may be brought only by the person who was the actual subject of the invasion of privacy, and not by other persons such as members of his or her family, applies in cases where the subject is deceased. Accordingly, the Restatement provides that an action for invasion of privacy can be maintained only by a living individual whose privacy has been invaded. The only exception to this rule involves the appropriation to one's own use of another's name or likeness.

*Kroger Co. v. Willgruber,* 920 S.W.2d 61, 65 (Ky.1996).

The standards for this tort are strict. The Kentucky Supreme Court has stated that "[c]itizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are part of a normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." *Id.*

According to the RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965), which Kentucky adopted in *Craft,* 671 S.W.2d at 251 (cited by *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 805 (6th Cir.1994)), a plaintiff alleges facts sufficient to support a finding of intentional or reckless infliction of emotional distress by alleging that the defendant has engaged in conduct which has been:

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain

62A AM.JUR.2D *Privacy* § 21 (1990). *Accord Cordell v. Detective Publications, Inc.,* 419 F.2d 989 (6th Cir.1969); *Kelly v. Johnson Publishing Co.,* 160 Cal.App.2d 718, 325 P.2d 659 (1958); *Kelley v. Post Publishing Co.,* 327 Mass. 275, 98 N.E.2d 286 (1951). *Cf. Reed v. Real Detective Pub. Co.,* 63 Ariz. 294, 162 P.2d 133 (1945) (privacy action would abate on death of plaintiff but could be revived against estate of deceased defendant).

amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

The court need not decide whether the stringent elements for this cause of action would have been met had plaintiff's son been living and asserted the claim in his own right. Under the present circumstances, it is clear that the plaintiff as a third person toward whom Mr. Williams's remarks were not directed has no claim for outrage or intentional infliction of emotional distress.

The decision of the Kentucky Court of Appeals in *Allen v. Clemons,* 920 S.W.2d 884 (Ky.Ct.App.1996), is directly on point. In *Allen,* the wife of an accused child molester (who was later convicted) brought a cause of action for intentional infliction of emotional distress against the defendant who had posted a sign in his yard which stated "Danger—Child Molester in the Community." All parties agreed that the message concerned plaintiff's husband.

The Kentucky Court of Appeals noted that plaintiff's claim was entirely based on the tort of outrage recognized in Kentucky in *Craft,* 671 S.W.2d 247. The court went on to state that the Kentucky Supreme Court only adopted RESTATEMENT (SECOND) OF TORTS § 46(1) in *Craft,* not § 46(2) which states that:

> Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress:
>
> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
>
> (b) to any other person who is present at the time, if such distress results in bodily harm.[6]

*Id.* at 886. Thus, since the cause of action in *Allen* was based on a section of the Restatement which the Supreme Court of Kentucky did not adopt, the court held the plaintiff's wife did not have a cause of action.

Similarly in the present case, the publication by defendant of any allegations regarding Chris Mineer was not directed at Ms. Mineer. Therefore, as a third party she cannot establish a cause of action for the tort of outrage under Kentucky law.

Therefore, the motion must be granted as to the intentional infliction of emotional distress.

For the reasons stated above, the court being advised,

**IT IS ORDERED** that the motion of defendants to dismiss be, and it is, hereby **granted,** and the complaint herein is hereby **dismissed,** with prejudice, at the cost of the plaintiff. A separate Judgment shall enter concurrently herewith.

---

6. Even if the Kentucky court had adopted this section, "recovery under this theory is typically limited to circumstances in which a plaintiff observes a sudden, traumatic injury to a family member...." *Wisniewski v. Johns-Manville Corp.,* 812 F.2d 81, 88–89 (3d Cir.

1987). *Accord Green v. Chicago Tribune Co.,* 286 Ill.App.3d 1, 221 Ill.Dec. 342, 675 N.E.2d 249 (1996) (privacy); *Upchurch v. New York Times Co.,* 314 S.C. 531, 431 S.E.2d 558 (1993) (newspaper report).